**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
Alan Gudino (SBN 326738)
*agudino@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

LAURYN MASSARI and AZIZA SALAMEH, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

NESTED BEAN, INC.,

Defendant.

Case No.: 8:24-cv-01225

**CLASS ACTION COMPLAINT**

1. Violation of Massachusetts Consumer Protection Act – Chapter 93A (Mass. Gen. Laws ch. 93A, *et seq.*)
2. Violation of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)
3. Violation of False Advertising Law (Cal. Bus. & Prof. Code § 17500)
4. Violation of Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*)
5. Breach of Warranty
6. Fraudulent Inducement— Intentional Misrepresentation
7. Negligent Misrepresentation
8. Unjust Enrichment

**JURY TRIAL DEMAND**

# TABLE OF CONTENTS

**Page No.**

I.      INTRODUCTION ................................................................. 1

II.     JURISDICTION .................................................................. 11

III.    VENUE ................................................................................ 12

IV.     PARTIES ............................................................................. 12

        A.      Plaintiffs .................................................................. 12

        B.      Defendant ................................................................ 15

V.      FACTUAL ALLEGATIONS .............................................. 16

        A.      Sudden Infant Death Syndrome (SIDS) ................. 16

        B.      Material Dangers of Weighted Baby Sleepwear ...... 16

        C.      Defendant Has a Duty to Evaluate the Safety of the Products ............. 20

        D.      Defendant Had Knowledge of the Products' Material Dangers ........... 21

        E.      Materiality of Challenged Representations and Material Omissions,
                Reasonable Consumer's Perception, and the Failure of the Products to
                Fulfill Defendant's Promises ................................. 29

        F.      Plaintiffs and Reasonable Consumers Were Misled by the Challenged
                Representations and the Material Omissions into Buying the Products,
                to Their Detriment ............................................... 32

        G.      The Products are Substantially Similar .................. 38

        H.      No Adequate Remedy at Law ................................ 39

VI.     CLASS ACTION ALLEGATIONS .................................. 41

VII.    CAUSES OF ACTION ...................................................... 45

        COUNT ONE .................................................................... 45

                "Unfair" Prong ....................................................... 52

                "Fraudulent" Prong ............................................... 54

                "Unlawful" Prong................................................... 56

        COUNT TWO ................................................................... 58

COUNT THREE ............................................................................... 60

COUNT FOUR ................................................................................. 45

COUNT FIVE................................................................................... 63

COUNT FIVE................................................................................... 65

COUNT SIX ..................................................................................... 67

COUNT SEVEN ............................................................................... 71

VIII. PRAYER FOR RELIEF ............................................................ 72

DEMAND FOR JURY TRIAL......................................................... 74

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

# COMPLAINT

1.      Plaintiffs Lauryn Massari and Aziza Salameh ("**Plaintiffs**"), individually and on behalf of all others similarly situated, as more fully described herein (the "**Class**" and "**Class Members**"), bring this class action complaint against Defendant Nested Bean, Inc. ("**Nested Bean**" or "**Defendant**"), and allege the following based upon information and belief, unless otherwise expressly stated as based upon personal knowledge.

## I.    INTRODUCTION

2.      **Overview.** A new parent's worst fear is to put their baby down to sleep and to have them never wake up. Defendant sells Products that make this unfathomable fear closer to a devastating reality. Defendant sells weighted baby swaddles and sleep sacks to help babies fall and stay asleep throughout the night. But Defendant fails to warn parents and consumers that the additional weight poses severe, life-threatening risks, including the Material Dangers further described below. Rather, Defendant labels and packages the Products with statements and imagery designed to convey that the Products are safe for babies to sleep in throughout the night, including photos of babies asleep while wearing the Products, and the statements "**Gently weighted** Calms all night, like your hand on baby's chest" (or "like being wrapped in your embrace") and "Better sleep **in 1-3 nights!**" (collectively the "**Challenged Representations**"). Contrary to Defendant's representations and omissions, the overwhelming consensus amongst pediatricians and baby product safety experts is that weighted baby swaddles and sleep sacks, like the Products, should not be used on infants due to the Material Dangers that may lead to a parent's worst nightmare—death. To be sure, the American Academy of Pediatricians ("**AAP**"), which represents 67,000 pediatricians, and Consumer Product Safety Commission ("**CPSC**"), a federal agency tasked with regulating consumer product safety, have issued strong warnings against the use of weighted baby swaddles and sleep sacks as a result of the Material Dangers. Parents, guardians, and other

caregivers rely on and expect manufacturers to accurately and completely disclose all significant dangers posed by baby sleepwear products when considering whether to buy them. But Defendant has failed to live up to these expectations and, instead, chosen to make millions at the expense of putting hundreds of thousands of babies' lives at risk.

3.    **Challenged Representations & Material Dangers.** The Challenged Representations—which include the images of babies asleep in the Products, the statements "**Gently weighted** Calms all night, like your hand on baby's chest" (or "like being wrapped in your embrace") and "Better sleep **in 1-3 nights!**", and Defendant's marketing of the Products as safe for babies to sleep in throughout the night—mislead reasonable consumers into believing that the Products do not pose life-threatening and severe safety risks, including: (1) reductions in oxygen saturation levels in infants, which may harm brain development ("**Oxygen Reduction Danger**"); (2) suffocation, which may lead to death ("**Suffocation Danger**"); and (3) suppressing or impeding on arousal responses, which may lead to Sudden Infant Death Syndrome ("**Deep Sleep Danger**") (collectively, the "**Material Dangers**"). The Material Dangers are further described below.

a.    **Oxygen Reduction Danger.** The Products, being weighted baby swaddles and sleep sacks (collectively, "**weighted baby sleepwear**"), make it harder for babies to breath and for their heart to beat properly, particularly when their rib cages are still soft. This increases the risk of reduced oxygen flow and increased carbon dioxide, which may negatively impact brain development.

b.    **Suffocation Danger.** The Products also make it more difficult for babies to get out of unsafe sleeping positions, such as rolling onto their backs or away from bedding or objects covering their mouth or nose, which increases the risk of suffocation.

c.    **Deep Sleep Danger.** The Products are also designed to induce a deep sleep, which may inhibit a baby's ability to startle, wake, and restabilize their systems that regulate oxygen and carbon dioxide, increasing the risk of SIDS. As such, the Challenged Representations mislead reasonable consumers into buying or overpaying for the Products, believing that they do not pose a risk of the Material Dangers.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

4.    **Material Omissions.** In addition, Defendant fails to disclose the Material Dangers to consumers prior to their purchase of the Products by stating expressly, clearly, and conspicuously on the Products' front packaging and labels that the Products pose severe and life-threatening risks, including the Oxygen Reduction Danger, Suffocation Danger, and Deep Sleep Danger (collectively, the "**Material Omissions**"). In this way, Defendant misleads reasonable consumers into buying or overpaying for the Products, believing that they do not pose a risk of the Material Dangers.

5.    **Exemplar Product Labels & Packaging. EXHIBIT 1** lists all identified Products at-issue, including, but not necessarily limited to: (1) Zen Neo, (2) Zen Swaddle, (3) Zen One, (4) Zen Sack, (5) Zen Bodysuit, and (6) Zen Footie, in all sizes, fabrics, and colors. **EXHIBIT 1** also provides exemplars of said Products' labels and packaging. The Products' packaging and labels within each Product line do not differ, except where they identify the Product's size, fabric, or color. The Products' packaging and labels across all at-issue Products do not meaningfully differ in all of the following pertinent respects:

a.    <u>Front Panels:</u> Each Product's front label depicts a baby sleeping in the Product and states (1) "Better sleep in **1-3 nights!**" and (2) "**Gently weighted** Calms all night, like your hand on baby's chest" (or nearly identical statements). In addition, the front label does not disclose the Material Dangers.

b.    <u>Front Flap Panels:</u> Each Product has a front-flap on the Product's container, which depicts a baby sleeping in the Product and states (1) "Weighted to **sooth** like your **touch**," (2) "**Mimics your touch** In minutes, gentle weighting calms like your embrace," (3) "**Aids self-soothing** Secure in the fall of your arms, babies fall back asleep on their own"; and (4) "**Boosts Wellness** Babies sleep better in 1-3 nights: It's the **Cuddle Effect**" (or nearly identical statements). In addition, the front-flap panels do not disclose the Material Dangers.

c.    <u>Back Panel:</u> Each Product has a back panel on the Product's container, which depicts a baby sleeping in the Product, describes the Products central purpose to apply weight that will help the baby fall asleep and stay asleep, and states "**Reliable and safe** Toxin-free. Exceeds safety standards." In addition, the back panel does not disclose the Material Dangers.

3

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

1   In addition, as described above and below, Defendant's advertisements regarding the

2   Products, including the Products' labels and packaging, and Defendant's website at

3   www.nestedbean.com, uniformly emphasize the same principal marketing message

4   that the Products are safe for babies to sleep in throughout the night, and omit any

5   indication that the Products increase the risk of the Material Dangers. As such, the

6   Products' labels, packaging, and advertising mislead reasonable consumers into

7   buying or overpaying for the Products based on the incorrect belief that the Products

8   do not pose any risk of the Material Dangers. Images of the Products' labels and

9   packaging, which exemplify the same Challenged Representations and Material

10  Omissions common to all Products at issue, are depicted below for each of the

11  identified Product lines for weighted baby sleepwear sold under the Nested Bean

12  brand name, including: (1) Zen Neo, (2) Zen Swaddle, (3) Zen One, (4) Zen Sack, (5)

13  Zen Bodysuit, and (6) Zen Footie:

14  / / /

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

CLASS ACTION COMPLAINT

**Zen Neo (Front)**



**Zen Neo (Front Flap)**



**Zen Neo (Back)**



Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

5

CLASS ACTION COMPLAINT

**Zen Swaddle (Front)**

**Zen Swaddle (Front Flap)**





**Zen Swaddle (Back)**



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**Zen One (Front)**

**Zen One (Front Flap)**





**Zen One (Back)**



7

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### Zen Sack (Front)



### Zen Sack (Front Flap)



### Zen Sack (Back)



8

CLASS ACTION COMPLAINT

**Zen Bodysuit (Front)**



**Zen Footie (Front)**



CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

6. **The Deception of the Challenged Representations and Material Omissions and Unlawful Marketing & Sale of the Products.** The Challenged Representations and Material Omissions have misled reasonable consumers, including Plaintiffs and the Class, into believing that the Products do not pose the Material Dangers. However, the Products fail to live up to Defendant's promises. Contrary to the reasonable consumer's perception of the Products with the Challenged Representations and Material Omissions, the Products pose severe health risks to babies, specifically the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger that put babies' lives in danger. Through falsely, misleadingly, and deceptively marketing the Products with the Challenged Representations and Material Omissions, Defendant has sought to take advantage of consumers' need for baby sleepwear products that are safe. In this way, Defendant has charged consumers a premium for Products that they would not otherwise have paid if Defendant disclosed the Material Dangers and had not misleadingly and deceptively advertised the Products with the Challenged Representations. Defendant has done so at the expense of unsuspecting consumers, as well as Defendant's lawfully acting competitors, over whom Defendant maintains an unfair competitive advantage in the sale of safe baby sleepwear products. Accordingly, Defendant's Challenged Representations and Material Omissions are misleading and deceptive, and therefore unlawful.

7. **The Products.** The Products at issue are Nested Bean brand weighted baby sleepwear products, sold in the United States, in all sizes, fabrics, and colors or patterns, including any packs, sets, and bundles (collectively referred to herein and throughout this complaint as the "**Products**"). The Products include, but are not necessarily limited to, the Nested Bean brand baby sleepwear products called (1) Zen Neo, (2) Zen Swaddle, (3) Zen One, (4) Zen Sack, (5) Zen Bodysuit, and (6) Zen Footie, which are identified in the Nested Bean Product List attached hereto as **EXHIBIT 1**. True and correct copies of exemplar labels and packaging for each of

the aforementioned Products are also provided in **EXHIBIT 1**. The labels and packaging for the various sizes, fabric options, and colors of the foregoing Products do not materially vary in their information, imagery, and layout.

8.     **Primary Dual Objectives.** Plaintiffs bring this action individually and in a representative capacity on behalf of those similarly situated consumers, such as parents, guardians, friends, other family members (aunts, uncles, etc.), daycare providers, nannies, babysitters, and other childcare providers, who purchased the Products during the relevant Class Period (Class and/or Subclass defined *infra* at ¶ 52) for dual primary objectives. *One*, Plaintiffs seek, on Plaintiffs' individual behalf and on behalf of the Class/Subclass, a monetary recovery of the price premium they have overpaid for Products as a result of the Challenged Representations and Material Omissions, as consistent with permissible law (including, for example, damages, restitution, disgorgement, and any applicable penalties/punitive damages solely as to those causes of action so permitted). *Two*, Plaintiffs seek, on Plaintiffs' individual behalf and on behalf of the Class/Subclass, injunctive relief to stop Defendant's unlawful manufacture, marketing, and sale of the Products with the Challenged Representations and Material Omissions to avoid or mitigate the risk of deceiving the public into believing that the Products do not pose the Material Dangers, by requiring Defendant to change its business practices, which may include one or more of the following: cessation of the Challenged Representations, disclosure of the Material Omissions on the Products' labels and/or packaging; disclosure of the Material Omissions in the Products' advertising; modification of the Products so that they no longer pose severe and life threatening dangers to babies; and/or discontinuance of the Products' manufacture, marketing, and/or sale.

## II.   <u>JURISDICTION</u>

9.     This Court has original jurisdiction over the action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III.   VENUE

10.   Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District. Specifically, Plaintiff, as identified below, purchased the unlawful Products in this District, and Defendant has marketed, advertised, and sold the Products within this District with the Challenged Representations and Material Omissions. Defendant Nested Bean is incorporated in the State of Delaware and maintains a principal place of business in the City of Hudson, Massachusetts.

## IV.   PARTIES

### A.   Plaintiffs

11.   **Plaintiff Lauryn Massari.** The following is alleged based upon Plaintiff Massari's personal knowledge:

    a.  **Residence.** Plaintiff Massari is a resident of the County of Orange, in the State of California.

    b.  **Purchase Details.** Plaintiff Massari purchased the Nested Bean Zen Sack (0-6 Months) – Classic: Night Sky (Zen Sack S06, FC6) (see Exhibit 1 Product List and Exemplar Labels & Packaging), (the "**Massari Purchased Product**"). Plaintiff Massari purchased the Nested Bean Zen Sack (0-6 Months) – Classic: Night Sky (0-6 Months) in Orange County in the State of California from a store for approximately $40.00 in or around June 2022.

    c.  **Reliance on Challenged Representations and Material Omissions to Form Reasonable Safety Perception.** In making the purchases, Plaintiff Massari reviewed the Massari Purchased Product's packaging and labels. Plaintiff Massari did not notice any safety warnings regarding the Material Dangers, and Plaintiff Massari relied on the Challenged Representations in purchasing the Product. This led Plaintiff Massari to believe that the Massari Purchased Product does not pose a risk of the Material Dangers.

    d.  **No Actual Knowledge of Falsity.** At the time of purchase, Plaintiff Massari did not know that the Products posed a risk of the Material Dangers.

    e.  **No Notice of Contradictions.** Plaintiff Massari did not notice any disclaimer, qualifier, or other explanatory statement or information on the Massari Purchased Products' labels or packaging that disclosed the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Material Dangers or otherwise suggested that the Products pose a risk of the Material Dangers.

f. **Causation/Damages.** Plaintiff Massari would not have purchased the Products or would not have paid as much for the Massari Purchased Products, had Plaintiff known of the Material Dangers—i.e., that the Products pose a risk of the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger.

g. **Desire to Repurchase.** Plaintiff Massari continues to see the Products available for purchase and desires to purchase them again if the Products were safe—i.e., if the Products did not pose the Material Dangers.

h. **Lack of Personal Knowledge/Expertise to Determine Truth.** Plaintiff Massari is not personally familiar with the science behind the Products as Plaintiff does not possess any specialized knowledge, skill, experience, or education in weighted baby sleepwear products, the safety risks related to weighted baby sleepwear products and/or baby products, and/or any guidance against the use of weighted baby sleepwear products. Thus, Plaintiff Massari is unable to determine whether the Products present Material Dangers—i.e., whether the Products do or do not pose a risk of the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger.

i. **Inability to Rely.** Plaintiff Massari is, and continues to be, unable to rely on the Challenged Representations and Material Omissions on the Products' labels and packaging to evaluate the safety of the Products with respect to the Material Dangers.

12. **Plaintiff Aziza Salameh.** The following is alleged based upon Plaintiff Salameh's personal knowledge:

a. **Residence.** Plaintiff Salameh is a resident of the County of Norfolk, in Massachusetts.

b. **Purchase Details.** Plaintiff Salameh purchased the Nested Bean Zen Sack (15-24 Months) – Winter: Twilight (Zen Sack L1524, FW5) (see Exhibit 1 Product List and Exemplar Labels & Packaging), (the "**Salameh Purchased Product**"). Plaintiff Salameh purchased the Nested Bean Zen Sack – Winter: Twilight (15-24 Months) in Norfolk County in Massachusetts from a store for approximately $55.00 in or around September 2023.

c. **Reliance on Challenged Representations and Material Omissions to Form Reasonable Safety Perception.** In making the purchases, Plaintiff Salameh reviewed the Salameh Purchased Product's packaging and labels. Plaintiff Salameh did not notice any safety warnings regarding the Material Dangers, and Plaintiff Salameh relied on the Challenged Representations in purchasing the Product. This led Plaintiff Salameh to believe that the Salameh Purchased Product does not pose a risk of the Material Dangers.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

d. **No Actual Knowledge of Falsity.** At the time of purchase, Plaintiff Salameh did not know that the Products posed a risk of the Material Dangers.

e. **No Notice of Contradictions.** Plaintiff Salameh did not notice any disclaimer, qualifier, or other explanatory statement or information on the Salameh Purchased Products' labels or packaging that disclosed the Material Dangers or otherwise suggested that the Products pose a risk of the Material Dangers.

f. **Causation/Damages.** Plaintiff Salameh would not have purchased the Products or would not have paid as much for the Salameh Purchased Products, had Plaintiff known of the Material Dangers—i.e., that the Products pose a risk of the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger.

g. **Desire to Repurchase.** Plaintiff Salameh continues to see the Products available for purchase and desires to purchase them again if the Products were safe—i.e., if the Products did not pose the Material Dangers.

h. **Lack of Personal Knowledge/Expertise to Determine Truth.** Plaintiff Salameh is not personally familiar with the science behind the Products as Plaintiff does not possess any specialized knowledge, skill, experience, or education in weighted baby sleepwear products, the safety risks related to weighted baby sleepwear products and/or baby products, and/or any guidance against the use of weighted baby sleepwear products. Thus, Plaintiff Salameh is unable to determine whether the Products present Material Dangers—i.e., whether the Products do or do not pose a risk of the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger.

i. **Inability to Rely.** Plaintiff Salameh is, and continues to be, unable to rely on the Challenged Representations and Material Omissions on the Products' labels and packaging to evaluate the safety of the Products with respect to the Material Dangers.

13. **Plaintiffs' Future Harm.** Defendant continues to market and sell the Products with the Challenged Representations and Material Omissions. Plaintiffs would like to purchase the Products in the future if they lived up to the reasonable consumer's perception of the Products as free of the Material Dangers. However, Plaintiffs are average consumers. The average consumer is not sophisticated in, for example, the dangers of weighted baby sleepwear, similar to and including the Products, and/or the existence of and the severity of the health risks associated with weighted baby sleepwear. Since Plaintiffs would like to purchase the Products again to obtain the benefits of safe baby sleepwear—despite the fact that the Products were

once marred by misleading advertising or warranties—Plaintiffs would likely and reasonably, but incorrectly, assume the Products are true to and conform with the reasonable consumer's perception of the Products as free from the Material Dangers based on a review of the Products' labels, packaging, and advertisements that contain the Challenged Representations and Material Omissions. Accordingly, Plaintiffs are at risk of reasonably, but incorrectly, assuming that Defendant has fixed the Products to avoid the Material Dangers, such that Plaintiffs may buy them again, believing they are no longer falsely advertised and warranted. In this regard, Plaintiffs are currently and in the future deprived of the ability to rely on the Challenged Representations and Material Omissions in deciding to purchase the Products.

## B.    **Defendant**

14.    **Defendant Nested Bean, Inc. ("Defendant")** is a Delaware corporation that has its headquarters and principal place of business in the City of Hudson, Massachusetts. Defendant was doing business in the State of California and Massachusetts at all relevant times, including the Class Period. Directly and through its agents, Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California and Massachusetts. Defendant is the owner, marketer, manufacturer, distributor, and/or seller of the Products, and created and/or authorized the labels, packaging, and advertising of the Products with the Challenged Representations and Material Omissions. Defendant and its agents promoted, marketed, and sold the Products at issue throughout the United States, including in particular the State of California and Massachusetts, this County or District. The unfair, unlawful, deceptive, and misleading Challenged Representations and Material Omissions on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents to deceive and mislead consumers in the State of California and Massachusetts and United States into purchasing the Products. Indeed, Defendant's unlawful emanated from Massachusetts and was disseminated throughout the United States. Additionally, Defendant knew or should have known

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1  of the deception of the Challenged Representations and Material Omissions, but it

2  failed to adequately inform and disclose the Material Dangers at the time Plaintiffs

3  and all Class Members purchased the Products, notwithstanding Defendant's duty to

4  do so. Further, Defendant had the right and authority, at all relevant times, to disclose

5  the Material Omissions and correct the deception of the Challenged Representations,

6  including the time leading up to and through the incident giving rise to the claims

7  asserted herein (including, Plaintiffs' purchases described *supra* at ¶¶ 10-11 in

8  addition to all Class Members' purchases).

9  **V.    FACTUAL ALLEGATIONS**

10      **A.    Sudden Infant Death Syndrome (SIDS)**

11      15.    Sudden Infant Death Syndrome ("SIDS") refers to the feared

12  phenomenon of a baby suddenly dying due to an unknown cause.[1] SIDS is the leading

13  cause of death for babies between one month and one year old.[2] 1,389 babies died due

14  to SIDS in 2020—accounting for 41 percent of all sudden unexpected infant deaths

15  in the United States.[3] SIDS, is therefore, understandably parents' top and worst fear

16  for their newborns. A parents' ultimate fear is to set their baby down to sleep and they

17  never wake up. This fear turns into a heartbreaking reality for some parents as most

18  SIDS deaths occur when a baby sleeps.[4] To help mitigate this risk, the American

19  Academy of Pediatrics (AAP) recommends that babies sleep on their backs.[5]

20      **B.    Material Dangers of Weighted Baby Sleepwear**

21      16.    **Consensus that Material Dangers Exist with Weighted Baby**

22  **Sleepwear.** As the CPSC stated in its letter to retailers, there is a "consensus among

23  public health agencies, pediatricians, and Safe Sleep proponents: that weighted infant

24  _____

25  [1]  *What is SIDS?*, SAFE TO SLEEP, https://safetosleep.nichd.nih.gov/about/sids-definition (last visited May 16, 2024).

26  [2]  *Sudden Infant Death Syndrome (SIDS)*, KIDS HEALTH, July 2022, https://kidshealth.org/en/parents/sids.html.

27  [3]  *Data and Statistics: Sudden Unexpected Infant Death and Sudden Infant Death Syndrome*, CDC, Mar. 8, 2023, https://www.cdc.gov/sids/data.htm.

28  [4]  *Sudden Infant Death Syndrome (SIDS)*, *supra* note 6.

[5]  *Safe Sleep*, American Academy of Pediatrics, https://www.aap.org/en/patient-care/safe-sleep/ (last visited May 16, 2024).

products, like sleep sacks, swaddles, and blankets are not safe for infant sleep."[6] The CPSC noted "**multiple infant deaths** involving weighted infant sleep sacks" as a major cause for concern for weighted baby sleepwear, like the Products.[7] The CPSC also noted that "[3] federal public health agencies and the American Academy of Pediatrics (AAP), an organization representing 67,000 pediatricians, have issued warnings recommending against the use of weighted infant blankets and wearables," like the Products.[8] Indeed, the CPSC, National Institutes of Health (NIH), the AAP, and the Centers for Disease Control (CDC) all agree that weighted baby sleepwear, like the Products, pose unreasonable safety hazards for babies.[9]

17.    **Material Dangers Defined.** The Products pose three distinct dangers that, despite the consensus of the dangers' existence, Defendant wholly fails to inform consumers of. These include, the danger that putting even gentle pressure on the babies' rib cage causes an obstruction, which makes it harder for the babies to breathe and for their heart to beat properly, thus reducing the flow of oxygen which negatively impacts brain development (the "**Oxygen Reduction Danger**");[10] the danger that the Products' weight makes it more difficult for babies to get out of unsafe sleeping positions, such as being able to roll back to their backs or move the sleepwear product from covering their mouth or nose (the "**Suffocation Danger**");[11] and the danger that babies will fall into a deep sleep, which disrupts their ability to develop the protective

---

[6] U.S. Consumer Prod. Safety Comm'r Rich Trumka, Jr., to Target Corp. Chair and CEO Brian Cornell, Walmart Inc. President and CEO Doug McMillon, Nordstrom CEO Erik B. Nordstrom, and Babylist Founder and CEO Natalie Gordon (Apr. 15, 2024), https://www.cpsc.gov/s3fs-public/Trumka_Statement_Weighted_Infant_Products_4_26_24_with_attachments.pdf?VersionId=iK5EDmatuGu9_z2jKt8t8BaWndFKwWCh.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] American Academy of Pediatrics, ASTM F15-19 Weighted Infant Products, June 15, 2023.

[11] Lauren Kirchner, *Pediatricians Warn that Weighted Baby Blankets, Sleep Sacks, and Swaddles are Not Safe*, CONSUMER REPS, July 26, 2023, https://www.consumerreports.org/babies-kids/child-safety/weighted-baby-blankets-sleep-sacks-swaddles-are-not-safe-a6236206799/ ("Medical experts say that even the 'gentle pressure' described by the manufacturers of weighted sleep products can be dangerous for infants for multiple reasons.").

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

systems to be able to startle themselves and wake up to restabilize their systems as a critical part of their development (the "**Deep Sleep Danger**"), (collectively the "**Material Dangers**").[12]

18.    **CPSC Warning Not to Use Weighted Baby Sleepwear.** These dangers led the CPSC to send letters to retailers alerting to them to the CPSC's warning to consumers: "'**Don't** use weighted blankets or weighted swaddles' for your babies."[13]

19.    **Oxygen Reduction Danger.** Unlike putting weight on an adult's chest, pediatricians state that putting weight on a baby's chest is extremely dangerous because the baby's rib cage is not fully rigid nor fully developed, and thus cannot sustain even gentle pressure.[14] Indeed, Dr. Rachel Moon, "the nation's leading expert on safe infant sleep, and co-chair of AAP's task force on Sudden Infant Death Syndrome (SIDS)" stated that even gentle pressure on a baby's rib cage from a weighted baby sleepwear product "makes it harder for them to breathe, it makes it harder for their heart to beat properly if there's pressure on there."[15] This disruption of airflow and heartbeat can cause severe brain damage to babies from "concerning reductions in oxygen saturation levels" as "there is evidence that the use of weight sleep products on infants can lead to lower oxygen levels, which if sustained, may be harmful to the developing infant's brain."[16] When an infant's cells receive too little oxygen, their cells do not receive the proper energy they require, which leads to these cells either working improperly or dying off.[17] This can lead to the improper development of critical organs such as the baby's brain and heart.[18]

---

[12] *Id.*
[13] *Swaddles and Blankets are Unsafe for Sleep; Retailers Should Consider Stopping Sales* (Apr. 15, 2024) (quoting U.S. Consumer Prod. Safety Comm'n, *Safe Sleep – Cribs and Infant Products*, https://www.cpsc.gov/SafeSleep (last visited May 15, 2024).
[14] Kirchner, *supra* note 15.
[15] U.S. Consumer Prod. Safety Comm'r Rich Trumka, Jr., *supra* note 10.
[16] American Academy of Pediatrics, ASTM F15-19 Weighted Infant Products, *supra* note 14.
[17] *Oxygen Therapy in Infants*, MEDLINEPLUS, Nov. 5, 2022, https://medlineplus.gov/ency/article/007242.htm.
[18] *Id.*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

20.    **Suffocation Danger.** The second danger associated with weighted baby sleepwear, like the Products, is that weighted baby sleepwear makes it harder for babies to move themselves out of unsafe sleeping positions.[19] The AAP recommends that the safest sleeping position for babies is on their back—not their stomach.[20] The Products, however, create the unreasonable safety hazard that if babies roll on to their stomach while sleeping that they it will not be able to roll back onto their backs (i.e., the safer position) with the added weight of the weighted baby sleepwear.[21] Additionally, there is the risk that the weighted baby sleepwear will shift out of position while the baby is sleeping and cover the baby's mouth or nose, thus creating a severe risk of suffocation compounded by additional weight of the weighted baby sleepwear making it more difficult for the baby to move the sleepwear product off of their mouth or nose.[22]

21.    **Deep Sleep Danger.** The third danger associated with weighted baby sleepwear, like the Products, stems from the Product working as intended by manufacturers, like Defendant. That is, the Product forcing the baby into an uninterrupted sleep.[23] Babies, however, are not meant to have so much sleep, and having uninterrupted sleep negatively impacts babies' development on critical survival systems.[24] Dr. Moon stated that "[i]n terms of babies who die of SIDS, what we think is happening is that they can't wake up; there's a problem with their arousal."[25] Therefore, creating a situation where the babies are in a deep,

---

[19] Kirchner, *supra* note 15.
[20] *Safe Sleep*, *supra* note 9.
[21] Kirchner, *supra* note 15.
[22] *Id.*
[23] *Dream Weighted Sleep Swaddle*, *supra* note 2 ("Our gently weighted, patent-pending Dream Swaddle is the perfect way to help your newborn feel calm, fall asleep faster and stay asleep longer.").
[24] *Sleep and Your Newborn*, KIDS HEALTH, July 2022, https://kidshealth.org/en/parents/sleepnewborn.html. ("Newborns wake every couple of hours to eat. Breastfed babies feed often, about every 2–3 hours. Bottle-fed babies tend to feed less often, about every 3–4 hours."); Kirchner, *supra* note 15 ("'You don't want your baby to sleep for 12 hours at night,' Moon says, and not just because young babies need to wake frequently to feed.").
[25] Kirchner, *supra* note 15.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1  uninterrupted sleep disrupts the babies' systems that allow them to startle themselves
2  to wake themselves up and restabilize.[26] Dr. Moon further stated that "[w]hen babies
3  wake up in the middle of the night, that is actually protective."[27] Thus, the Products'
4  intended purpose inherently makes babies less protected and more susceptible to
5  severe dangers, such as SIDS.

6       **C.**    **Defendant Has a Duty to Evaluate the Safety of the Products**

7      22.   **Federally Mandated Duty to Evaluate and Disclose Baby Product**
8  **Safety Risks.** Defendant, during all relevant times, was under a federal duty to
9  evaluate the Products for unreasonable risk of injury. Federal regulations require
10  "[e]very manufacturer, distributor, and retailer of a consumer product distributed in
11  commerce who obtains information which reasonably supports the conclusion that its
12  product creates an unreasonable risk of serious injury or death is required to notify
13  the [CPSC] immediately." 16 C.F.R. § 1115.6(a) (citing 15 U.S.C. 2064(b)(3)).
14  Defendant is obligated under this regulation to determine "whether a product presents
15  an unreasonable risk by examining the "utility of the product or the utility of the
16  aspect of the product that causes the risk, the level of exposure of consumers to the
17  risk, the nature and severity of the hazard presented, and the likelihood of resulting
18  serious injury or death." 16 C.F.R. § 1115.6(b). By conducting this required analysis
19  of the Products, Defendant knew or should have known that the Products' present the
20  Material Dangers, and yet took no action to eliminate the Material Dangers or, at the
21  very least, warn consumers of the Material Dangers. The AAP classified weighted
22  baby sleepwear, like the Products, as "unnecessary products" as they highlight the
23  extreme safety concerns with the Products.[28]

24      23.   **Federal Hazardous Substance Act.** Additionally, the Federal Hazardous
25  Substance Act, codified at 15 USCS §§ 1261, *et seq.* ("**FHSA**") prohibits the sale of
26  misbranded hazardous substances. *See id.* at § 1263. A misbranded hazardous

---

[26] *Id.*
[27] *Id.*
[28] American Academy of Pediatrics, *supra* note 14.

substance is, among other things, a "hazardous substance (included a toy, or other article intended for use by children, which is a hazardous substance. . . ), intended, or packaged in a form suitable, for use in the household or by children, if the packaging or labeling of such substance is in violation of an applicable regulation . . . or if such substance . . . fails to bear a label—(1) which states conspicuously . . . (D) the signal word 'WARNING' or 'CAUTION' on all other hazardous substances; (E) an affirmative statement of the principal hazard or hazards, such as 'Flammable,' 'Combustible,' 'Vapor Harmful,' 'Causes Burns,' 'Absorbed Through Skin,' or similar wording descriptive of the hazard; (F) precautionary measures describing the action to be followed or avoided. . . (G) instruction, when necessary or appropriate, for first-aid treatment; . . . (I) instructions for handling and storage of packages which require special care in handling or storage; and (J) the statement . . . (ii) if the article is intended for use by children and is not a banned hazardous substance, adequate directions for the protection of children from the hazard, and (2) on which any statements required under subparagraph (1) of this paragraph are located prominently and are in the English language in conspicuous and legible type in contrast by typography, layout, or color with other printed matter on the label." 15 USCS § 1261(p). Accordingly, Defendant had a duty to investigate and disclose all safety hazards regarding the Products, including the Material Dangers.

24. **Defendant's Duty to Keep Apprised of Prominent Child Safety Groups' Publicized Opinions.** Defendant's duty to evaluate the safety of the Products entails or should have entailed keeping itself apprised of the opinions of prominent, well-known institutions and advocacy groups for the safety of children's and baby's products. Such groups include, the AAP, the CPSC, the NIH, and the CDC. Therefore, Defendant had a duty to keep itself apprised of these groups' publicized opinions regarding the safety of weighted baby sleepwear, like the Products.

**D.    Defendant Had Knowledge of the Products' Material Dangers**

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

25. **Defendant's Knowledge.** Had Defendant fulfilled its obligation under federal regulations to evaluate the safety of the Products, then Defendant knew or should have known that the Products pose the Material Dangers. Defendant knew or should have known of these dangers throughout the Class Period.

26. **Prominent Child Safety Groups Condemn Weighted Baby Sleepwear.** The consensus among leading professionals in child and infant safety is that weighted baby sleepwear, like the Products, are not safe because they pose the Material Dangers. *Supra* ¶ 15. Indeed, the CPSC, the AAP, the NIH, and the CDC have all publicized their opinions on the severe safety concerns with weighted baby sleepwear, like the Products, and how they pose the Material Dangers.[29]

27. **American Academy of Pediatrics.** The AAP is "an organization of 67,000 pediatricians committed to the optimal physical, mental, and social health and well-being for all infants, children, adolescents, and young adults."[30] AAP's most recent recommendation, issued in 2022, is that "weighted blankets, weighted sleepers, weighted swaddles, or other weighted objects not be placed on or near the sleeping infant."[31] The AAP also stated that although there is a "single crossover randomized nonblinded trial of 16 infants with neonatal abstinence syndrome [that] found no adverse events when a 1-pound weighted blanket was placed on each infant for 30 minute observed episodes. . . . [N]o studies have documented the safety weights for

---

[29] (**CPSC**) Statement of U.S. Consumer Prod. Safety Comm'r Rich Trumka, Jr., *Beware: Weighted Infant Swaddles and Blankets are Unsafe for Sleep; Retailers Should Consider Stopping Sales* (Apr. 15, 2024) (quoting U.S. Consumer Prod. Safety Comm'n, *Safe Sleep – Cribs and Infant Products*, https://www.cpsc.gov/SafeSleep#:%7E (last visited May 15, 2024); (**AAP**) Rachel Y. Moon et al., *Sleep-Related Infant Deaths: Updated 2022 Recommendations for Reducing Infant Deaths in the Sleep Environment*, 150 PEDIATRICS, June 2022, at 1, 5, https://doi.org/10.1542/peds.2022-057990; (**NIH**) *Frequently Asked Questions (FAQs)*, SAFE TO SLEEP – NIH, https://safetosleep.nichd.nih.gov/reduce-risk/FAQ (last visited May 15, 2024); (**CDC**) *Babies Sleep Safely*, CDC, Sep. 29, 2023, https://www.cdc.gov/reproductivehealth/features/baby-safe-sleep/index.html.

[30] *About the AAP*, AMERICAN ACADEMY OF PEDIATRICS, https://www.aap.org/en/about-the-aap/ (last visited May 15, 2024).

[31] Rachel Y. Moon et al., *supra* note 33.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

infants in an unobserved, nonclinical sleep environment."[32] The AAP has further explained the faith that consumers put into the safety of baby products in the marketplace stating that "[p]arents expect that products available for purchase at reputable retailers are thoroughly tested for safety."[33] The AAP also cautioned that despite scientific data showing just how dangerous weighted baby sleepwear, like the Products, are, "[w]aiting for the emergence of confirmatory data about these concerns while these products proliferate is an unacceptable outcome when each of those data points will be a family whose lives are forever marked by unfathomable tragedy of their infant dying from a sleep-related death."[34]

28. **National Institutes of Health.** The NIH extensively details why the dearth of any scientific research or studies supporting the safety of weighted baby sleepwear is concerning to say the least.[35] The NIH acknowledges and warns of the Oxygen Reduction Danger (stating that "[t]here are no studies showing that it is safe to put any weight on baby's chest") and the Suffocation Danger ("the added weight could make it more difficult for them to roll onto their back again," which is especially dangerous because "[s]leeping on the stomach carries the highest risk of SIDS").[36] The NIH also takes extreme issue with the only study of the impact of weighted baby sleepwear on babies that involved 16 babies observed for 30 minutes at a time, since the study was a "tightly controlled situation [that] is very different from using a weighted product on a baby for an hour or more, without constant monitoring, so the safety of using the product in the home cannot be assumed."[37]

---

[32] Rachel Y. Moon et al., *Evidence Base for 2022 Updated Recommendations for a Safe Infant Sleeping Environment to Reduce the Risk of Sleep-Related Infant Deaths*, AMERICAN ACADEMY OF PEDIATRICS, Vol. 150, num. 1, page 20, July 2022, page 20.

[33] American Academy of Pediatrics, ASTM F15-19 Weighted Infant Products, *supra* note 14.

[34] *Id.*

[35] *Frequently Asked Questions (FAQs)*, SAFE TO SLEEP – NIH, https://safetosleep.nichd.nih.gov/reduce-risk/FAQ (last visited May 15, 2024).

[36] *Id.*

[37] *Id.*

CLASS ACTION COMPLAINT

29.    **Centers for Disease Control.** The CDC "supports the recommendations issued by the [AAP] to reduce the risk of all sleep-related infant deaths, including SIDS."[38] The CDC stated that certain precautions can help parents and caregivers create a safe sleeping environment for babies.[39] Specifically, the CDC stated that "[w]eighted products such as weighted sleepers, weighted swaddles, weighted sleep sacks, and weighted blankets are not safe for infants."[40]

30.    **Consumer Product Safety Commission.** The CPSC, in its letter pleading for retailers to stop selling weighted baby sleepwear, like the Products, stated that "CPSC has a clear warning for safe infant sleep: '**Don't** use weighted blankets or weighted swaddles' for your babies."[41] The CPSC posed the rhetorical question to retailers: "In the interest of public safety, I've asked retailers nationwide to reflect on this question: with all the advice out there cautioning against their use, are weighted infant swaddles really what you want to be selling to your consumers?"[42] The CPSC went on to state that they "expect many responsible retailers, armed with knowledge, will say 'no.'"[43]

31.    **SaferProducts.gov Database.** Pursuant to 15 U.S.C. § 2055a(a)(1), the CPSC maintains a consumer incident database, SaferProducts.gov, where the public is able to both submit incident reports and search for filed incident reports by product name. Pursuant to 15 U.S.C. § 2055a(c), once the CPSC receives the incident report, it is required to send the report, within five business days, to the manufacturers named in the report, and the manufacturers must be given the opportunity to comment on the public report—thereby facilitating communication between incident reporters and

---

[38] *Babies Sleep Safely*, CDC, *supra* note 33.
[39] *Id.*
[40] *Id.*
[41] Statement of U.S. Consumer Prod. Safety Comm'r Rich Trumka, Jr., *supra* note 33.
[42] *Id.*
[43] *Id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

manufacturers.[44] The following reports named Defendant and the Products as the cause for the complained of incident and resulting injuries.

> a. ***Nested Bean Weighted Sleep Swaddle Causing Suffocation.*** In this report, the consumer-parent detailed how their 3-month-old baby boy "was wearing the Nested Bean Zen One Classic sleepsack as a swaddle. He began to squirm and the weighted portion of the sleepsack bunched up around his throat and mouth, causing a serious potential for asphyxiation."[45] The incident occurred on October 11, 2021 and reported on the same day.[46] The report was sent to Defendant on October 18, 2021.[47]

> b. ***Nested Bean Weighted Sleep Swaddle Causing Suffocation.*** In this report, the consumer-parent detailed how the product's "material around the neck bunched up around her neck, while moving around during light sleep, causing her to have difficulty breathing causing a potential strangulation incident."[48] The consumer-parent also noted that she followed the sizing guidelines from the manufacturer.[49] The incident occurred on April 25, 2023 and reported on the same day.[50] The report was sent to Defendant on May 10, 2023.[51]

32.    **Additional SaferProducts.gov Reports.** Defendant also had a duty to investigate incidents involving similar products to the Products in its ongoing duty to evaluate the safety of the Products. Doing so would have revealed the following reports involving substantially similar products[52] from Defendant's competitors Dreamland Baby Co. and Grampa's Garden:

> a. ***Dreamland Baby Transitional Sack Causing Suffocation and Vomiting.*** In this incident report, the consumer reported how the Dreamland Baby Transitional Swaddle caused a 5-month old baby to have his neck "bunched into the sack and caused him to lose

---

44    *About SaferProducts.gov*, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION, https://www.saferproducts.gov/About (last visited May 16, 2024).

45    *Incident Report Details*, Report No. 20211011-D8D57-2147359217, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION, Oct. 11, 2021, https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3467145.

46    *Id.*

47    *Id.*

48    *Incident Report Details*, Report No. 20230425-E6489-2147347882, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION, May 24, 2023, https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4184992.

49    *Id.*

50    *Id.*

51    *Id.*

52    Defendant filed a patent infringement lawsuit against Dreamland Baby Co. for allegedly infringing upon Defendant's designs for weighted baby sleepwear products. Nested Bean, Inc., v. Dreamland Baby Co., No. 3:20-cv-07546, ECF – 1 Complaint for Patent Infringement and Unfair Competition (N.D. Cal. Oct. 27, 2020).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

oxygen."[53] The baby boy "stopped breathing momentarily and vomited" because the "sleep sack cut off his circulation around his neck and it could have been a lot worse."[54] The consumer specifically identified the Dreamland Baby Transitional Swaddle as the Product in question.[55] This incident occurred on and was reported on February 10, 2024. [56] The report was published on March 7, 2024.[57]

b. ***Dreamland Baby Weighted Sleep Swaddle Involved in Infant Death.*** In this report, the medical examiner and coroner stated that a 2-month old baby girl died while being in a swing with the Dreamland Baby Weighted Sleep Swaddle.[58] The tragic incident occurred on June 16, 2023 and was reported on January 8, 2024. [59] The report was published on February 15, 2024.[60]

c. ***Dreamland Baby Weighted Sleep Swaddle Involved in Infant Death from Suffocation Danger.*** In this report, a consumer-parent detailed how their 2-month-old baby boy was wearing a Dreamland Baby Weighted Sleep Swaddle when they "laid him to sleep and when [they] left the room [they] were able to see his face. When [they] returned, he was face down."[61] The consumer-parent "believe[s] he turn[ed] and couldn't turn back from the weight of the sleep sack. He passed away."[62] The incident occurred on October 26, 2023 and was reported on April 23, 2024.[63] The report was published on May 15, 2024.[64]

d. ***Grampa's Garden Weighted Baby Sleepwear Product Involved in an Infant Death.*** In this incident report, the consumer-parent described how their 7.5-month-old baby boy was napping with a weighted sleepwear product designed for infants.[65] The boy rolled onto his belly was unable to roll onto his back. The boy passed

---

[53] *Incident Report Details*, Report No. 20240210-CD77F-2147341092, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION, Mar. 7, 2024, https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4615246.

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Incident Report Details*, Report No. 20240108-D04D9-2147342934, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION, Feb. 15, 2024, https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4559262.

[59] *Id.*

[60] *Id.*

[61] *Incident Report Details*, Report No. 20240423-011A7-2147339607, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION, Apr. 23, 2024, https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4703727.

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Incident Report Details*, Report No. 20150127-91B23-2147436020, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION, Jan. 27, 2015,, https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1465029.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

away on August 21, 2014.[66] The incident was reported on January 27, 2015.[67] The report was published on February 24, 2015.[68]

33.    **Death of Alicia Isabel Thomas Wearing Defendant's Weighted Baby Sleepwear Product and the CPSC's Guidance.** Alicia Isabel Thomas was just 6 months old when she tragically passed away while wearing a weighted baby sleep sack on March 18, 2022.[69] In its November 2023 hearing on dangerous products, the CPSC discussed the dangers of weighted baby sleepwear products, specifically pointing to Alicia Isabel Thomas's death from wearing a weighted sleepwear product as evidence of the products danger.[70] CPSC Commissioner Rich Trumka Jr. described in a letter how the CPSC "heard from Mayra Thomas-Romero as she discussed the tragic death of her beloved infant daughter Alicia Isabel Thomas, who passed while wearing a product deemed dangerous by NIH, CSC, and the [AAP]: a weighted infant sleep sack."[71] These discussions led the CPSC to alert retailers to the CPSC's guidance that warns consumers: "Don't use weighted blankets or weighted swaddles for your babies."[72] The weighted sleep sack involved in the death of Alicia Isabel Thomas was sold by Defendant.[73] Thus, Defendant, per its duty to keep itself apprised of information relating to the safety of the Products, knew or should have known of

---

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] U.S. Consumer Prod. Safety Comm'n, *Commission Meeting FY24 Operating Plan Decisional*, YOUTUBE (Nov. 9, 2023), https://www.youtube.com/watch?v=LHemQpZZBN0&t=1045s (CPSC hearing discussing how Alicia Isabel Thomas's mother detailed to the CPSC how her daughter died in a weighted sleep sack).

[70] *Id.*

[71] Commissioner Rich Trumka, Jr., *FY24 Statement-2*, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION, Feb. 13, 2024, https://www.cpsc.gov/s3fs-public/FY24-Statement2.pdf?VersionId=GFL2SPaceQoqdiFFze0o9G7bsnJ7qyRS.

[72] Statement of U.S. Consumer Prod. Safety Comm'r Rich Trumka, Jr., *Target, Walmart, Nordstrom, and Babylist Commit to Stop Selling Weighted Infant Products,* UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION, Apr. 26, 2024, https://www.cpsc.gov/About-CPSC/Commissioner/Richard-Trumka/Statement/Target-Walmart-Nordstrom-and-Babylist-Commit-to-Stop-Selling-Weighted-Infant-Products.

[73] *Ali's Dream*, FACEBOOK, https://www.facebook.com/AlisDreamKC/ (Alicia Isabel Thomas's mother discussing how her daughter died from a Nested Bean, Inc. weighted sleep sack) (last visited May 16, 2024).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1   Alicia Isabel Thomas's tragic death and should have evaluated the safety of its
2   Products. Such an investigation would have, or should have, resulted in Defendant
3   knowing of the Material Dangers posed by its Products.

4       34.    **U.S. Senator Calls Out Defendant for its Unsafe Products.** United
5   States Senator Richard Blumenthal recently sounded the alarm on weighted baby
6   sleepwear by requesting the Federal Trade Commission to investigate two
7   manufacturers of weighted infant sleep products for deceptive advertising.[74]
8   Defendant Nested Bean was one of the manufacturers named by Senator
9   Blumenthal.[75] Senator Blumenthal also sent his concerns directly to Defendant and
10  its founder and president Manasi Gangan.[76] Senator Blumenthal specifically pointed
11  out how Defendant claims that "all Zen Sleep products have undergone extensive tests
12  to meet both mandatory and voluntary safety standards" yet the "the U.S. Consumer
13  Product Safety Commission (CPSC) does not have an existing standard for the use of
14  weighted sleep product for infants."[77] Senator Blumenthal also highlights how "[t]he
15  Nested Bean website claims that these products were developed in consultation with
16  doctors and pediatric pulmonologists. However, the [AAP] recently shared their
17  opposition to weighted sleep products for infants explicitly stating that 'weighted
18  swaddle clothing or weighted objects within swaddles are not safe and therefore not
19  recommended.'"[78] Senator Blumenthal expressed how he is "deeply concerned by
20  [Defendant's] decision to continue selling these products to vulnerable and

21
22
23      [74] Lauren Kirchner, *Amazon and Target Will Bar Sales of Weighted Baby Sleep
    Sacks and Weighted Baby Swaddles Due to Safety Concerns*, CONSUMER REPORTS,
24  Apr. 25, 2024, https://www.consumerreports.org/babies-kids/child-safety/retailers-
    to-bar-sales-of-weighted-baby-sleep-sacks-swaddles-a8296427468/
25      [75] *Blumenthal Raises Serious Concerns over Weighted Sleep Sacks & Swaddles
    for Infants*, RICHARD BLUMENTHAL, Dec. 6, 2023,
26  https://www.blumenthal.senate.gov/newsroom/press/release/blumenthal-raises-
    serious-concerns-over-weighted-sleep-sacks-and-swaddles-for-infants.
27      [76] *Id.*
        [77] *Id.*
28      [78] *Id.* (citing *Our Story*, NESTED BEAN, https://www.nestedbean.com/pages/our-
    story (last visited May 21, 2024)).

CLASS ACTION COMPLAINT

unsuspecting parents who are sleep-deprived, stressed and desperate for help, all
while lacking reputable research to back the safety of these items." [79]

**E.    Materiality of Challenged Representations and Material Omissions,
Reasonable Consumer's Perception, and the Failure of the Products
to Fulfill Defendant's Promises**

35.    **Consumer Demand for Safe Baby Products.** The Healthline
Parenthood Report Series survey involving new parents found that safety is the
paramount concern for parents when purchasing baby products.[80] When respondents
of the survey were asked to choose the most important factor when purchasing baby
products, "safety [was] overwhelmingly the top factor." [81] Weighted baby sleepwear,
like the Products, have also gained popularity as various large retailers such as
Walmart, Target, and Nordstrom sold weighted baby sleepwear, like the Products
during the Class Period.[82] Consumers further expect, as noted by the AAP, that
products on the marketplace "available for purchase at reputable retailers are
thoroughly tested for safety."[83] Consumers, therefore, place a higher degree of faith
and trust that products being sold in the marketplace, especially baby products, are
safe products.

36.    **Challenged Representations and Material Omissions on Products'
Labels and Packaging.** Defendant trades on the consumers' desire for safe baby
products to convince consumers that the Products do not pose the Oxygen Reduction
Danger, the Suffocation Danger, or the Deep Sleep Danger.

37.    **Design/Purpose.** The Products are weighted sleep sacks, swaddles, and
other weighted baby sleepwear products for babies which are marketed as safe baby

[79] *Id.*
[80] HEALTHLINE Media, NEW PARENT PURCHASING BEHAVIOR – PARENTHOOD
Report 2-5 (2020) (accessed at https://healthlinemedia.com/assets/files/Healthline-
Parenthood-Report-Part-2-New-Parent-Purchasing-Behavior-(2).pdf)
[81] *Id.*
[82] Kirchner, *supra* note 78 (discussing where weighted baby sleepwear products
were sold and how some prominent retailers have decided to stop selling such
products citing safety concerns).
[83] American Academy of Pediatrics, *supra* note 14.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

sleepwear products and include the statements "**Gently weighted** Calms all night, like your hand on baby's chest" (or "like being wrapped in your embrace") and "Better sleep **in 1-3 nights!**" *See* **Exhibit 1** (Product List and Exemplar Labels & Packaging).

38.    **Uniform Name and Product Identification.** Defendant uniformly names and prominently labels the Products as "NESTED BEAN." *Id.*

39.    **Challenged Representations.** Defendant prominently advertises on the Products' labels, packaging, and its website that the Products are safe for babies to sleep in and include the statements "**Gently weighted** Calms all night, like your hand on baby's chest" (or "like being wrapped in your embrace") and "Better sleep **in 1-3 nights!**", which inform reasonable consumers that the Products do not pose the Oxygen Reduction Danger, the Suffocation Danger, nor the Deep Sleep Danger.

40.    **Material Omissions.** Defendant fails to disclose the Oxygen Reduction Danger, the Suffocation Danger, nor the Deep Sleep Danger anywhere on the Products' packaging or labeling, including in particular on the front-facing panels to inform consumers that the Products pose, contrary to their design, and Reinforcing Labeling Claims, severe health and potentially life-threatening dangers. *Id.*

41.    **Reinforcing Labeling and Advertising Claims.** Defendant reinforces the Challenged Representations and the Material Omissions, through its labeling, advertising imagery, and product design. Defendant reinforces the Challenged Representations and the Material Omissions by touting on its website that the Products are "Rigorously tested against mandatory and voluntary safety requirements"[84] despite the fact that there are no specific safety requirements for weighted baby sleepwear products. Defendant further misrepresents the safety of the Products on its website by stating: "We are deeply proud of our long-standing safety

---

[84]    *We Put Safety Front & Center*, NESTED BEAN, https://www.nestedbean.com/pages/safety (last visited May 22, 2024).

track record with no safety incidents caused."[85] This is in direct contradiction to the SaferProducts.gov incident reports sent directly to Defendant and the death of Alicia Isabel Thomas wearing one of the Products. *See supra* ¶¶ 28, 30.

42.  **Defendant's Brand Strategy of Providing "Safe" Baby Products.** Defendant utilizes a long-standing brand strategy to prop up the Products as "safe." Defendant's website illustrates this strategy as it touts in multiple areas the "safety" of the Products and echoes this strategy on the Products' labels by including the statements "**Gently weighted** Calms all night, like your hand on baby's chest" (or "like being wrapped in your embrace") and "Better sleep **in 1-3 nights!**"

43.  Indeed, the Challenged Representations are on each Product's label or packaging, and each Product's primary display panel of the front label or packaging is devoid of any warning of the Material Dangers, i.e., that they contain the Material Omissions. *See* **Exhibit 1** (Product List and Exemplar Labels & Packaging). Defendant deceives reasonable consumers, like Plaintiff, and lull them into a false sense of security that any dangers not disclosed on the front label or packaging are not present with the Products. *Id.* The net-effect or net impression on consumers who view the Products with the Challenged Representations and the Material Omissions is that the Products do not pose severe and life-threatening dangers, including the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger.

44.  **Nested Bean Brand Weighted Baby Sleepwear Poses Severe Dangers.** The Products, Nested Bean brand weighted baby sleepwear products, like any other weighted baby sleepwear products, pose severe and life-threatening dangers, including the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger. Like other weighted baby sleepwear products, the Products are designed to be weighted and thus, put the health and lives of babies at risk of life-threatening and debilitating health conditions.

---

[85] *FAQ*, NESTED BEAN, https://www.nestedbean.com/pages/faq (last visited May 22, 2024).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**F.** **Plaintiffs and Reasonable Consumers Were Misled by the Challenged Representations and the Material Omissions into Buying the Products, to Their Detriment**

45.    **Reasonable Consumer's Perception.** The Challenged Representations and the Material Omissions lead reasonable consumers, like Plaintiff, into believing that the Products do not present a risk of the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger.

46.    **Materiality.** The Challenged Representations and the Material Omissions are material to reasonable consumers, including Plaintiff, in deciding to buy the Products—meaning, that the Material Dangers are important to consumers in deciding whether or not the Products are safe enough to buy and use for their primary purpose as a baby sleepwear product.

47.    **Reliance.** The Class, including Plaintiff, reasonably relied on the Challenged Representations and the Material Omissions in deciding to purchase the Products.

48.    **Falsity.** The Challenged Representations and the Material Omissions are deceptive because they mislead consumers into believing that the Products do not pose a risk of the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger, when they in fact do.

49.    **Consumers Lack Knowledge of Falsity.** The Class members, including Plaintiff, who purchased the Products do not know and had no reason to know, at the time of purchase, that the Products pose a risk of the Material Dangers. Nothing on the Products' labeling or packaging adequately, expressly, unambiguously, or conspicuously informs consumers of the Material Dangers—specifically, that the Products pose a risk of the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger. *See* **Exhibit 1** (Product List and Exemplar Labels & Packaging). That is because the Products' labeling and packaging do not contain a clear, unambiguous, and conspicuously displayed statement, that reasonable

consumers are likely to notice, read, and understand to mean that, contrary to the Challenged Representations and the Material Omissions and the Products' design as a baby sleepwear product, that the Products pose a risk of the Material Dangers. Indeed, consumers reasonably place a higher level of faith in the safety of baby products as they expect that a higher degree of safety standards be applied to baby products that would prevent unsafe baby products from being in the marketplace.

50. **Defendant's Knowledge.** Defendant knew, or should have known, that the Challenged Representations and the Material Omissions are false, misleading, deceptive, and unlawful, at the time that Defendant manufactured, marketed, advertised, labeled, and sold the Products using the Challenged Representations and the Material Omissions to Plaintiffs and the Class throughout the Class Period. Defendant intentionally and deliberately used the Challenged Representations and the Material Omissions, alongside the Products' design/purpose, to cause Plaintiffs and similarly situated consumers to buy the Products believing that the Products do not pose the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger.

a. **Knowledge of Reasonable Consumers' Perception.** Defendant knew or should have known that the Challenged Representations and the Material Omissions would lead reasonable consumers into believing that the Products are safe in that they do not pose a risk of the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger. Not only has Defendant utilized a long-standing brand strategy to identify the Products as safe baby sleepwear products, but Defendant also has an obligation under section 5 of the Federal Trade Commission Act, codified at 15 U.S.C. §§ 45, to evaluate their marketing claims from the perspective of the reasonable consumer. That means Defendant was statutorily obligated to consider whether the Challenged Representations and the Material Omissions, be it in isolation or conjunction with their marketing strategy, would mislead reasonable consumers into believing that the Products are safe and do not pose the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger. Thus, Defendant either knew that the Challenged Representations and the Material Omissions are misleading before it marketed the Products to the Class, including Plaintiff, or Defendant would have known that that they were deceptive had it complied with its statutory obligations.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

b.    **Knowledge of Falsity.** Defendant manufactured and marketed the Products with the Challenged Representations and the Material Omissions, but Defendant opted to make Products that pose a risk of the Material Dangers. Specifically, Defendant advertised, labeled, and packaged the Products with the Challenged Representations and the Material Omissions of the Material Dangers, but chose to manufacture Products that pose a risk of the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger.

(1) ***First***, Defendant, during all relevant times, was under a federal duty to evaluate the Products for unreasonable risk of injury pursuant to 16 C.F.R. § 115.6(a) (citing 15 U.S.C. 2064(b)(3). These regulations require "[e]very manufacturer, distributor, and retailer of a consumer product distributed in commerce who obtains information which reasonably supports the conclusion that its product creates an unreasonable risk of serious injury or death is required to notify the [CPSC] immediately." 16 C.F.R. § 1115.6(a) (citing 15 U.S.C. 2064(b)(3)). Defendant is obligated under this regulation to determine "whether a product presents an unreasonable risk by examining the "utility of the product or the utility of the aspect of the product that causes the risk, the level of exposure of consumers to the risk, the nature and severity of the hazard presented, and the likelihood of resulting serious injury or death." 16 C.F.R. § 1115.6(b). By conducting this required analysis of the Products, Defendant knew or should have known that the Products' present the Material Dangers, and yet took no action to eliminate the Material Dangers or, at the very least, warn consumers of the Material Dangers.

(2) ***Second***, the Consumer Product Safety Council, and numerous federal and state laws regulating the safety of consumer goods and, in particular, baby products, impose statutory obligations on Defendant and provide regulatory guidance for Defendant, as manufacturers of baby products, to evaluate the safety of its products and baby products for reasonably foreseeable uses and misuses. Weighted baby sleepwear products have been condemned by numerous institutions, including the AAP, CPSC, NIH, and CDC to the point that the industry consensus is that the Products are not safe for use with babies. Had Defendant exercised reasonable care and complied with its statutory obligations to identify and

34

CLASS ACTION COMPLAINT

evaluate reasonably foreseeable risks entailed in the use or misuse of weighted baby sleepwear products—such as babies' heart rate reducing  causing a reduction in oxygen, suffocation from making it harder for the baby to move from unsafe positions, or babies falling into a deep sleep that decreases their protective systems of being able to wake themselves up, Defendant would have recognized the heightened and reasonably foreseeable danger of weighted baby sleepwear products, like the Products being used for babies.

(3) *Third*, Defendant knew or should have known that the weighted baby sleepwear products pose the Material Dangers because the Material Dangers arise from the fact they place weight on the baby's undeveloped rib cage. Accordingly, Defendant knew or should have known that the Products pose a risk of the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger based on the reasonably foreseeable misuses and deliberately designed weighted nature of the baby sleepwear products.

(4) *Fourth*, child and product safety advocacy groups and pediatric doctors have repeatedly and publicly warned weighted baby sleepwear manufacturers of the severe and life-threatening dangers of weighted baby sleepwear, including the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger.  Defendant knew or should have known about reports from governmental bodies focused on product safety, particularly baby product safety, and institutions dedicated to babies' safety (such as the Consumer Product Safety Commission, the American Academy of Pediatrics, the Centers for Disease Control, and the National Institutes of Health), This includes, the recommendations from the AAP, the CPSC, the CDC, and the NIH that warn consumers to not use weighted baby sleepwear products because of the Material Dangers. *Supra* ¶ 23. If Defendant had exercised a modicum of effort to comply with its statutory obligation to evaluate the safety of its baby products, particularly given the Products' reasonably foreseeable risks of misuse and their intended design to force babies into a deep sleep, Defendant would have known of the Material Dangers.

(5) *Fifth*, Defendant was sent numerous incident reports

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

from SaferProducts.gov, pursuant to 15 U.S.C. § 2055(a)(1) and the database's records. *Supra* ¶ 28. These incident reports detail how the Material Dangers of the Products have led to babies put in harm's way by the Products through suffocation. *Id.* These reports sent directly to Defendant gave Defendant knowledge of the Material Dangers. *Id.*

(6) **Sixth**, Defendant also should have kept itself apprised of public SaferProducts.gov incident reports dealing with similar products to the Products in its ongoing duty to evaluate the safety of the Products. *Supra* ¶ 29. By doing so, Defendant knew or should have known of the multitude of instances occurring before and during the relevant class period of similar products presenting the Material Dangers. *Id.* Such reports would have prompted Defendant to be aware that its Products present the same potential harm from the Material Dangers. *Id.*

(7) Seventh, Defendant also should have known of the CPSC hearings which discussed the death of 6-month-old Alicia Isabel Thomas, who had been wearing Defendant's Product when she tragically passed. *Supra* ¶ 30. This tragic and alarming loss of Alicia Isabel Thomas should have alerted Defendant to the Material Dangers of its Products. *Id.*

(8) **Eighth**, United States Senator Richard Blumenthal directly and publicly warned Defendant and the Federal Trade Commission that weighted baby sleepwear, specifically the Products are not safe for babies. *Supra* ¶ 31. Senator Blumenthal also warned Defendant that its representations regarding how the Products are safe is misleading and potentially false advertising given that the AAP clearly and unequivocally warns against the use of such products for babies. *Id.* Had Defendant given even a slight investigation into Senator Blumenthal's concerns, it would have known of the Material Dangers and the misleading nature of the Products' Challenged Representations and Material Omissions. *Id.*

c. **Knowledge of Materiality.** Defendant knew or should have known of the Challenged Representations' and the Material Omissions' importance to consumers.

(1) **First**, safety is of paramount importance in any

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

consumer's decision to buy baby products. *Supra* ¶ 34. Further, the importance of safety and warnings escalate the younger a child is. Indeed, the importance of safety skyrockets when the product is intended for infants and especially when it is intended to be used while the infant is sleeping. Common sense also dictates that consumers value baby products toys that do not pose unknown life-threatening dangers to babies.

(2) **Second**, Defendant was aware of the importance of safety to consumers because Defendant touted the purported safety of the Products through its advertising and labeling with such statements as "**Boosts Wellness** Babies sleep better in 1-3 nights: It's the **Cuddle Effect**" and "**Reliable and safe** Toxin-free. Exceeds safety standards." Defendant further touted the safety of the Products on its website on its Safety page. The use of such statements to market the Products demonstrates that Defendant was aware that safety concerns about the Products were important to consumers.

(3) **Third**, it is a matter of common sense that safety for baby products, like the Products, are important to consumers. In particular, Defendant knew or should have known that the risk of life-threatening and severe injuries, such as the Material Dangers, would affect whether consumers purchased the Products.

d. **Defendant's Continued Deception, Despite Its Knowledge.** Defendant, as the manufacturer and marketer of the Products, had exclusive control over the use of the Challenged Representations and the disclosure of the Material Omissions on the Products' labels, packaging, and advertisements—i.e., Defendant readily and easily could have disclosed the Material Dangers and corrected the Challenged Representations on the Products' advertisements, packaging, and labels. However, despite Defendant's knowledge that the Challenged Representations and the Material Omissions lead consumers to believe that the Products do not pose a risk of the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger, Defendant's knowledge that the Products do pose a risk of the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger, and Defendant's knowledge that the Challenged Representations and the Material Omissions are important to consumers in deciding to buy the Products (as outlined above), Defendant deliberately chose to market the Products with the Challenged Representations and the Material Omissions thereby misleading consumers into buying or overpaying for the Products. Thus, Defendant knew or should have known, at all relevant times, that the Challenged Representations and the Material Omissions mislead reasonable consumers, such as Plaintiffs and the Class, into buying the Products to attain the product-attributes that Defendant falsely advertised and warranted—to wit, that the Products do not pose a risk of the Material Dangers.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

51.     **Duty to Disclose Material Omissions.** At all relevant times, Defendant had an obligation to disclose the Material Omissions—that the Products do pose a risk of the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger —to consumers, including Plaintiffs and the Class, prior to their purchase of the Products. Defendant not only knew or should have known that reasonable consumers would perceive Material Omissions to mean that the Products do not pose a risk of the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger, but Defendant also knew or should have known that this attribute was material to consumers in deciding to buy the Products. Defendant further knew or should have known that the reasonable consumer's perception of the Material Omissions is false—i.e., that the Products do pose a risk of the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger.

52.     **Detriment.** Plaintiffs and similarly situated consumers would not have purchased the Products or would not have overpaid a price premium for them, if they had known that the Challenged Representations and the Material Omissions were false because, contrary to the deceptive safety perception engendered by the Challenged Representations and the Material Omissions as claimed, promised, warranted, advertised, and/or represented, the Products pose a risk of the Material Dangers. Accordingly, based on Defendant's Challenged Representations and Material Omissions, reasonable consumers, including Plaintiff, purchased Products that she would not have purchased, and/or overpaid for Products free of the Material Dangers, to their detriment.

### G.     The Products are Substantially Similar

53.     As described herein, Plaintiffs purchased the Massari Purchased Product and Salameh Purchased Product. The additional Products identified *supra* at ¶ 6 (collectively, the "**Unpurchased Products**") are substantially similar to the Purchased Products.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

a. **Defendants.** All Products are manufactured, sold, marketed, advertised, labeled, and packaged by Defendants.

b. **Brand.** All Products are sold under the same brand name: Nested Bean.

c. **Marketing Demographics.** All Products are marketed directly to consumers for use as baby sleepwear products.

d. **Purpose.** All Products are weighted baby sleepwear products designed and marketed to be safe baby products.

e. **Use.** All Products are used in the same manner—they are placed on babies while they sleep.

f. **Misrepresentations and Omissions.** All Products contain one or more Challenged Representations and Material Omissions on their packaging and labeling.

g. **Packaging.** All Products are packaged in packaging that is similar in all material aspects.

h. **Key Attributes.** All Products pose severe and life-threatening dangers—specifically, the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger.

i. **Misleading Effect.** The misleading effect of the Challenged Representations and the Material Omissions on consumers is the same for all Products—consumers over-pay or otherwise buy baby sleepwear products that are free the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger, but all consumers receive baby sleepwear products that pose a risk of the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger. Had consumers known of the Material Dangers, they would not have bought the Products or would not have paid as much for them.

## H.    No Adequate Remedy at Law

54.    **No Adequate Remedy at Law.** Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a. **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

b. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with the Challenged Representations and the Material Omissions, across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the Challenged Representations and the Material Omissions. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). Thus, Plaintiffs and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct). Similarly, unjust enrichment/restitution is broader than breach of warranty. For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution. Thus, Plaintiffs and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class because Defendant continues to misrepresent the Products with the Challenged Representations and the Material Omissions. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiffs are *currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiffs' investigation has not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **California vs. Nationwide Class Claims**. Violations of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiffs and the California Subclass, against Defendants, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiff and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

f. **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action, and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiffs' individual claims and any certified class or subclass. Plaintiffs therefore reserve Plaintiffs' right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for Plaintiffs and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## VI.    CLASS ACTION ALLEGATIONS

55.    **Class Definition.** Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and all others similarly situated as members of the Class defined as follows:

All residents of the United States who, within the applicable statute of limitations periods, purchased the Products, with the Challenged Representations and Material Omissions on the Products' labels or packaging, for purposes other than resale ("**Nationwide Class**");

All residents of California who, within four years prior to the filing of this action, purchased the Products, with the Challenged Representations and Material Omissions on the Products' labels or packaging, for purposes other than resale ("**California Subclass**");

All residents of Massachusetts who, within four years prior to the filing of this action, purchased the Products, with the Challenged Representations and Material Omissions on the Products' labels or packaging, for purposes other than resale ("**Massachusetts Subclass**");

All residents of the United States who, within four years prior to the filing of this action, purchased the Products directly from Defendant, with the Challenged Representations and Material Omissions on the Products' labels or packaging, for purposes other than resale ("**Direct-to-Consumer Subclass**").

(the "Nationwide Class," "California Subclass," "Massachusetts Subclass," and "Direct-to-Consumer Subclass" are collectively referred to as the "**Class**").

56. **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, their assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

57. **Reservation of Rights to Amend the Class Definition.** Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

58. **Numerosity.** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the State of California, the Massachusetts Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the State of Massachusetts, and the Direct-to-Consumer Subclass consists of thousands of purchasers (if not more) dispersed throughout the United States. Accordingly, it would be impracticable to join all members of the Class before the Court.

59. **Common Questions Predominate.** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

a.     Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

b.     Whether Defendant's conduct of advertising and selling the Products omitting that they present severe, and potentially life-threatening dangers to babies constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq.*;

c.     Whether Defendant used deceptive representations and omissions in connection with the sale of the Products in violation of Civil Code section 1750, *et seq.*;

d.     Whether Defendant represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq.*;

e.     Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq.*;

f.     Whether Defendant's labeling and advertising of the Products are misleading in violation of California Business and Professions Code Sections 17500, *et seq.*;

g.     Whether Defendant knew or by the exercise of reasonable care should have known their labeling and advertising was and is misleading in violation of California Business and Professions Code Sections 17500, *et seq.*;

h.     Whether Defendant's conduct is an unfair business practice within the meaning of California Business and Professions Code Sections 17200, *et seq.*;

i.     Whether Defendant's conduct is a fraudulent business practice within the meaning of California Business and Professions Code Sections 17200, *et seq.*;

j.     Whether Defendant's conduct is an unlawful business practice within the meaning of California Business and Professions Code Sections 17200, *et seq.*;

k.     Whether Plaintiffs and the Class paid more money for the Products than they actually received;

l.     How much more money Plaintiffs and the Class paid for the Products than they actually received;

m.    Whether Defendant's conduct constitutes breach of warranty;

n.     Whether Plaintiffs and the Class are entitled to injunctive relief; and

o.     Whether Defendant was unjustly enriched by their unlawful conduct.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

60. **Predominance**. The common questions of law and fact predominate over questions that affect only individual Class Members.

61. **Typicality.** Plaintiffs' claims are typical of the claims of the Class Members they seek to represent because Plaintiffs, like the Class Members, purchased Defendant's misleading and deceptive Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiffs' and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

62. **Adequacy.** Plaintiffs are adequate representatives of the Class she seeks to represent because their interests do not conflict with the interests of the Class Members Plaintiffs seek to represent. Plaintiffs will fairly and adequately protect Class Members' interests and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

63. **Ascertainability.** Class Members can easily be identified by an examination and analysis of the business records regularly maintained by Defendants, among other records within Defendant's possession, custody, or control. Additionally, further Class Member data can be obtained through additional third-party retailers who retain customer records and order histories.

64. **Superiority and Substantial Benefit.** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

    a.    The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

b. Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoy their ill-gotten gains;

c. Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d. When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and Class Members can seek redress for the harm caused to them by Defendant.

65. **Inconsistent Rulings.** Because Plaintiffs seek relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

66. **Injunctive/Declaratory Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or declaratory relief with respect to the Class as a whole.

67. **Manageability.** Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## VII.  CAUSES OF ACTION

### COUNT ONE

**Violation of Massachusetts Consumer Protection Act – Chapter 93A**

**(Mass. Gen. Laws ch. 93A, *et seq*.)**

**(*On Behalf of Plaintiff Salameh, the Massachusetts Subclass, Direct-to-Consumer Subclass, and the Nationwide Class*)**

68. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

69. **MA & DTC Subclasses and Nationwide Class.** Plaintiff Salameh brings this claim individually and on behalf of the Massachusetts Subclass, Direct-to-Consumer Subclass, and Nationwide Class, who purchased the Products within the applicable statute of limitations.

70. **Chapter 93A Standard.** Chapter 93A provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

71. **Trade/Commerce.** Defendant selling, advertising, and distribution of the Products meets the definition of "trade" and "commerce" of Chapter 93A in Mass. Gen. Laws ch. 93A § 1(b).

72. **Defendant.** Defendant is a "person," as defined by Chapter 93A in Mass. Gen. Laws ch. 93A § 1(a).

73. **Consumers.** Plaintiff and members of the Massachusetts Subclass and Direct-to-Consumer Subclass are "persons," as defined by Chapter 93A in Mass. Gen. Laws ch. 93A § 1(a). Plaintiff and members of the Massachusetts Subclass and Direct-to-Consumer Subclass are consumers as they engaged in commerce primarily for personal, family, or household purposes.

74. **Violations of Chapter 93A.** Pursuant to Chapter 93A in Mass. Gen. Laws ch. 93A § 9(1), Plaintiff and members of the Massachusetts Subclass and Direct-to-Consumer Subclass bring this claim based on Defendant's violation of Chapter 93A in Mass. Gen. Laws ch. 93A § 2(a). Defendant violated Chapter 93A § 2 by selling the Products to Plaintiff, the Massachusetts Subclass, and the Direct-to-Consumer Subclass through the misleading, deceptive, and fraudulent Challenged Representations and Material Omissions. By falsely advertising the Products as safe and materially omitting the Material Dangers, Defendant caused injury in fact to Plaintiff, the Massachusetts Subclass, and the Direct-to-Consumer Subclass in the form of the money paid and overpaid for the falsely advertised Products. The Challenged Representations and Material Omissions constitute "unfair" or

"deceptive" conduct by Defendant in that they falsely and misleadingly advertise the Products as safe when they are not and do not warn of the Material Dangers. Such conduct deceives consumers like Plaintiff and members of the Massachusetts Subclass and Direct-to-Consumer Subclass, as well as gives Defendant an unfair advantage over its lawfully acting competitors.

75.    **Knowledge.** Defendant's uniform and material representations and omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its representations and omissions were misleading.

76.    **Malicious.** Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Products.

77.    **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the Massachusetts and Direct-to-Consumer Subclass could not have reasonably avoided such injury. Plaintiff and members of the Massachusetts Subclass and Direct-to-Consumer Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiff and members of the Massachusetts Subclass and Direct-to-Consumer Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

78.    **Causation/Reliance/Materiality.** Plaintiff, the Massachusetts Subclass, and Direct-to-Consumer Subclass suffered harm as a result of Defendant's violations of Chapter 93A because they relied on the Challenged Representations and Material Omissions in deciding to purchase the Products. The Challenged Representations and Material Omissions were a substantial factor. The Challenged Representations and Material Omissions were material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

79.    **Chapter 93A, Section 9(3)—Prelitigation Demand/Notice.** Pursuant to Mass. Gen. Laws ch. 93A § 9(3), concurrent to the filing of this complaint, Plaintiff's counsel, acting on behalf of Plaintiff and members of the class, mailed a Demand

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Letter via U.S. certified mailed return receipt requested addressed to Defendant Nested Bean, Inc. at its principal place of business registered with the Massachusetts Secretary of the Commonwealth (Nested Bean, Inc., 131 Coolidge St., Suite 102 Hudson, MA 01749) and their registered agent for service of process (Manasi Gangan – Registered Agent for Nested Bean, Inc., 131 Coolidge St., Suite 102 Hudson, MA 01749)). At the appropriate time, Plaintiff will amend the operative complaint to seek monetary damages and penalties pursuant to Chapter 93A.

80. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of Chapter 93A, Plaintiff and members of the Massachusetts Subclass and Direct-to-Consumer Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

81. **Injunction.** Pursuant to Mass. Gen. Laws ch. 93A §9(1), Plaintiff and members of the Massachusetts Subclass and Direct-to-Consumer Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendant's violations of Chapter 93A and to dispel the public misperception generated, facilitated, and fostered by Defendant's false advertising campaign. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unfair and deceptive practices will continue to harm Plaintiff, the Massachusetts Subclass, and the Direct-to-Consumer Subclass. Accordingly, Plaintiff seeks an injunction to enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to Chapter 93A Section 9(1) and otherwise require Defendant to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendant's deceptive labeling of the Products with the Challenged Representations and Material Omissions.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

# COUNT TWO

## Violation of California Unfair Competition Law

## (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

## (*On Behalf of Plaintiff Massari and the California Subclass*)

82. **Incorporation by Reference.** Plaintiffs re-allege and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

83. **California Subclass.** This cause of action is brought pursuant to California Business and Professions Code Sections 17200, *et seq.*, on behalf of Plaintiff Massari and the California Subclass who purchased the Products within the applicable statute of limitations.

84. **The UCL.** California Business and Professions Code Sections 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

85. **False Advertising Claims.** Defendants, in their advertising and packaging of the Products, made misleading statements and fraudulent omissions regarding the quality and characteristics of the Products—specifically, the Material Omissions—despite the fact the Products do pose severe and potentially life-threatening dangers, including the Obstruction Danger and the Non-Detection Danger. Such omissions appear on the label and packaging of the Products, which are sold at retail stores and point-of-purchase displays.

86. **Defendant's Deliberately Fraudulent Marketing Scheme.** Defendant does not have any reasonable basis for the omissions about the Products made in Defendant's advertising and on Defendant's packaging or labeling because the Products do pose severe and life-threatening dangers, including the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger. Defendant knew and know that the Products pose severe and life-threatening dangers, including the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

though Defendant intentionally advertised and marketed the Products to deceive reasonable consumers that the Products do not pose such severe dangers.

87. **Misleading Advertising Claims Cause Purchase of Products.** Defendant's labeling and advertising of the Products led to, and continues to lead to, reasonable consumers, including Plaintiff, believing that the Products do not pose severe and life-threatening dangers, including the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger.

88. **Injury in Fact.** Plaintiff and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon the Material Omissions—namely Plaintiff and the California Subclass lost the purchase price for the Products they bought from the Defendant.

89. **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of California Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of California Business and Professions Code Section 17200.

90. **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

91. **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of

50

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1  a pattern, practice and/or generalized course of conduct, which will continue on a

2  daily basis until Defendant voluntarily alters its conduct or Defendant is otherwise

3  ordered to do so.

4      92.  **Injunction.** Pursuant to California Business and Professions Code

5  Sections 17203 and 17535, Plaintiff and members of the California Subclass seek an

6  order of this Court enjoining Defendant from continuing to engage, use, or employ its

7  practice of labeling and advertising the sale and use of the Products. Likewise,

8  Plaintiff and members of the California Subclass seek an order requiring Defendant

9  to disclose such misrepresentations and omissions, to preclude Defendant's failure to

10  disclose the existence and significance of said misrepresentations, and cessation of

11  the use of the Challenged Representations on the Products' labels, packaging, and

12  advertising.

13      93.  **Causation/Damages.** As a direct and proximate result of Defendant's

14  misconduct in violation of the UCL, Plaintiff and members of the California Subclass

15  were harmed in the amount of the purchase price they paid for the Products. Further,

16  Plaintiff and members of the California Subclass have suffered and continue to suffer

17  economic losses and other damages including, but not limited to, the amounts paid

18  for the Products, and any interest that would have accrued on those monies, in an

19  amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for

20  violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains

21  to compensate Plaintiff and the California Subclass for said monies, as well as

22  injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm

23  that will result.

24      94.  **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this

25  cause of action for violation of the UCL on behalf of Plaintiff and the California

26  Subclass. Defendant's unfair, fraudulent, and unlawful conduct described herein

27  constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of

28  punitive damages as permitted by law. Defendant's misconduct is malicious as

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff.  Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights.  Defendant's misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers.  The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

### ***"Unfair" Prong***

95.    **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

96.    **Injury.** Defendant's action of mislabeling the Products with the Challenged Representations and Material Omissions does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive products commensurate with their reasonable expectations, overpay for the Products, receive Products of lesser standards than what they reasonably expected to receive, and are exposed to increased health risks. Consumers cannot avoid any of the injuries caused by Defendant's deceptive labeling and advertising of the Products. Accordingly, the injuries caused by Defendant's deceptive labeling and advertising outweigh any benefits.

97. **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

98. **No Utility.** Here, Defendant's conduct of labeling the Products with the Challenged Representations and Material Omissions when the Products pose severe and life-threatening dangers, including the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger, has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

99. **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

100. **Unfair Conduct.** Defendant's labeling and advertising of the Products, as alleged herein, is deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's misrepresentations and omissions constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

101. **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendants could have refrained from labeling the Products with the Challenged Representations and Material Omissions.

102. **Defendant's Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

103. **Injunction.** Pursuant to California Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practices of labeling the Products with the Challenged Representations and Material Omissions.

104. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact, have lost money and were exposed to increased health risks as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for these Products. Specifically, Plaintiff and the California Subclass paid for Products that are safe baby sleepwear products that do not pose severe and life-threatening dangers, including the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### ***"Fraudulent" Prong***

105. **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

106. **Fraudulent & Material Representations and Omissions.** Defendants used the Challenged Representations and Material Omissions with the intent to sell the Products to consumers, including Plaintiff and the California Subclass. The Challenged Representations and Material Omissions are deceptive, and Defendant knew, or should have known, of their deception. The Challenged Representations and the Material Omissions are likely to mislead consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

107. **Fraudulent Business Practice.** As alleged herein, the misrepresentations and omissions by Defendant constitutes a fraudulent business practice in violation of California Business and Professions Code Section 17200.

108. **Reasonable and Detrimental Reliance.** Plaintiff and the California Subclass reasonably and detrimentally relied on the material and deceptive Challenged Representations and Material Omissions to their detriment in that they purchased the Products.

109. **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further their legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations and Material Omissions.

110. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

111. **Injunction.** Pursuant to California Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of labeling the Products with the Challenged Representations and Material Omissions.

112. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products with the attribute of being a safe baby sleepwear product that did not pose severe and life-threatening dangers when, in fact, the Products do pose severe and life-threatening dangers, including the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger. Plaintiff and the California Subclass would not have purchased the Products if they had known the truth. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Unlawful" Prong*

113. **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

114. **Violations of CLRA and FAL.** Defendant's labeling of the Products, as alleged herein, violates California Civil Code Sections 1750, *et seq.* (the "**CLRA**") and California Business and Professions Code Sections 17500, *et seq.* (the "**FAL**") as set forth below in the sections regarding those causes of action.

115. **Fraud.** Additionally, Defendant's use of the Challenged Representations and the Material Omissions to sell the Products violates California Civil Code Sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent deceit), and 1711 (deceit upon the public), as set forth above.

116. **Misbranded Hazardous Substance.** Additionally, Defendants' Material Omissions on the Products' labels and packaging violate the Federal Hazardous Substance Act, codified at 15 USCS §§ 1261, et seq. ("FHSA"), which prohibits the sale of misbranded hazardous substances. *See* 15 USCS § 1263. A misbranded hazardous substance is a "hazardous substance (including a toy, or other article intended for use by children, which is a hazardous substance. . . ), intended, or packaged in a form suitable, for use in the household or by children, if the packaging or labeling of such substance is in violation of an applicable regulation . . . or if such substance. . . fails to bear a label—(1) which states conspicuously . . . (D) the signal word 'WARNING' or 'CAUTION' on all other hazardous substances; (E) an affirmative statement of the principal hazard or hazards, such as 'Flammable,' 'Combustible,' 'Vapor Harmful,' 'Causes Burns,' 'Absorbed Through Skin,' or similar wording descriptive of the hazard; (F) precautionary measures describing the action to be followed or avoided. . . (G) instruction, when necessary or appropriate, for first-aid treatment; . . . (I) instructions for handling and storage of packages which require special care in handling or storage; and (J) the statement . . . (ii) if the article

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

is intended for use by children and is not a banned hazardous substance, adequate directions for the protection of children from the hazard, and (2) on which any statements required under subparagraph (1) of this paragraph are located prominently and are in the English language in conspicuous and legible type in contrast by typography, layout, or color with other printed matter on the label." 15 USCS § 1261(p). In violation of the FHSA, the Products are a misbranded hazardous substance because their packaging and labels fail to conspicuously and prominently provide an affirmative statement, in English, describing the Material Dangers, alongside "WARNING" or "CAUTION" signal words, or provide adequate precautionary measures, first-aid treatment instructions, instructions for the safe storage and handling of the Products, or directions for the protection of children from the Material Dangers.

117. **Additional Violations.** Defendant's conduct in making the deceptive misrepresentations and omissions described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to their competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business and Professions Code Sections 17200-17208. Additionally, Defendant's misrepresentations of material facts, as set forth herein, violate California Civil Code Sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

118. **Unlawful Conduct.** Defendant's packaging, labeling, and advertising of the Products, as alleged herein, are deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of their unlawful conduct.

119. **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further their legitimate business interests, other than the

conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations and Material Omissions.

120.  **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

121. **Injunction.** Pursuant to California Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of deceptive advertising of the Products.

122. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Plaintiff and the California Subclass would not have purchased the Products if they had known that Defendant purposely deceived consumers into believing that the Products were safe baby sleepwear products. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

## COUNT THREE

**Violation of California False Advertising Law**

**(Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**

**(*On Behalf of Plaintiff Massari and the California Subclass*)**

123. **Incorporation by reference.** Plaintiff re-alleges and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

124. **California Subclass.** Plaintiff Massari brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

125. **FAL Standard.** The False Advertising Law, codified at California Business and Professions Code Sections 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

126. **Challenged Representations and Material Omissions Disseminated to the Public.** Defendant violated Section 17500 when it advertised and marketed the Products through the unfair, deceptive, and misleading Challenged Representations and Material Omissions disseminated to the public through the Products' labeling, packaging, and advertising. These representations were deceptive because the Products do not conform to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

127. **Knowledge.** In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading, and acted in violation of Section 17500.

128. **Intent to sell.** Defendant's Challenged Representations and Material Omissions were specifically designed to induce reasonable consumers, like Plaintiff and the California Subclass to purchase the Products.

129. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products and increased health risks to children using the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

130. **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## COUNT FOUR

### Violation of California Consumers Legal Remedies Act

### (Cal. Civ. Code §§ 1750, *et seq.*)

### (*On Behalf of Plaintiff Massari and the California Subclass*)

131. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

132. **California Subclass.** Plaintiff Massari brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

133. **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

134. **Goods/Services.** The Products are "goods," as defined by the CLRA in California Civil Code Section 1761(a).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

135. **Defendant.** Defendant is a "person," as defined by the CLRA in California Civil Code Section 1761(c).

136. **Consumers.** Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code Section 1761(d).

137. **Transactions.** The purchase of the Products by Plaintiff and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code Section 1761(e).

138. **Violations of the CLRA.** Defendant violated the following sections of the CLRA by selling the Products to Plaintiff and the California Subclass through the misleading, deceptive, and fraudulent Challenged Representations and Material Omissions:

    a. Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have."

    b. Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another."

    c. Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."

139. **Knowledge.** Defendant's uniform and material representations and omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its representations and omissions were misleading.

140. **Malicious.** Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Products.

141. **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the California Subclass could not have reasonably avoided such injury. Plaintiff and members of the California Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

142. **Causation/Reliance/Materiality.** Plaintiff and the California Subclass suffered harm as a result of Defendant's violations of the CLRA because they relied on the Challenged Representations and Material Omissions in deciding to purchase the Products. The Challenged Representations and Material Omissions were a substantial factor. The Challenged Representations and Material Omissions were material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

143. **Section 1782(d)—Prelitigation Demand/Notice.** Pursuant to California Civil Code Section 1782, concurrent to the filing of this complaint, Plaintiff's counsel, acting on behalf of Plaintiff and members of the class, mailed a Demand Letter via U.S. certified mailed return receipt requested addressed to Defendant Nested Bean, Inc. at its principal place of business registered with the Massachusetts Secretary of the Commonwealth (Nested Bean, Inc., 131 Coolidge St., Suite 102 Hudson, MA 01749) and their registered agent for service of process (Manasi Gangan – Registered Agent for Nested Bean, Inc., 131 Coolidge St., Suite 102 Hudson, MA 01749). At the appropriate time, Plaintiff will amend the operative complaint to seek monetary damages pursuant to the CLRA.

144. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

145. **Injunction.** Pursuant to California Civil Code Section 1780, Plaintiff and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendant's violations of the CLRA and to dispel the public misperception generated, facilitated, and fostered by Defendant's false

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

advertising campaign. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unfair and deceptive practices will continue to harm Plaintiff and the California Subclass. Accordingly, Plaintiff seeks an injunction to enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to Section 1780(a)(2) and otherwise require Defendant to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendant's deceptive labeling of the Products with the Challenged Representations and Material Omissions.

## <u>COUNT FIVE</u>

### Breach of Warranty

### (*On Behalf of Plaintiffs Salameh and Massari and the Class*)

146. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

147. **Class.** Plaintiffs Massari and Salameh bring this claim individually and on behalf of the Class, including the California Subclass, Massachusetts Subclass, Direct-to-Consumer Subclass, and Nationwide Class, who purchased the Products within the applicable statute of limitations.

148. **Express Warranty.** By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling, and through their marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiffs and members of the Class and Defendant. Through the Challenged Representations and Material Omissions on the Products' labeling, packaging, and advertising, Defendant expressly warrants that the Products do not pose a risk of the Material Dangers.

149. **Implied Warranty of Merchantability.** By advertising and selling the Products at issue, Defendant, merchants of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

of fact made on the Products' packaging and labeling, and through their marketing and advertising, as described herein. The Challenged Representations and Material Omissions on the Products' labels, packaging, and advertising, in addition to the implied warranty of merchantability, constitute implied warranties that became part of the basis of the bargain between Plaintiffs and members of the Class and Defendant—to wit, that the Products do not pose a risk of the Material Dangers.

150. **Breach of Warranty.** Contrary to Defendant's warranties, the Products do pose a risk of the Material Dangers and, therefore, Defendant breached its warranties about the Products and their qualities.

151. **Causation/Remedies.** As a direct and proximate result of Defendant's breach of warranty, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

152. **Punitive Damages.** Plaintiffs seek punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiffs and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiffs and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiffs and consumers as Defendant was aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers,

including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such misconduct. Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## COUNT SIX

### Fraudulent Inducement – Intentional Misrepresentation
### (*On Behalf of Plaintiffs Salameh and Massari and the Class*)

153. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

154. **Class.** Plaintiffs Massari and Salameh bring this claim individually and on behalf of the Class, including the California Subclass, Massachusetts Subclass, Direct-to-Consumer Subclass, and Nationwide Class, who purchased the Products within the applicable statute of limitations.

155. **Defendant's Misrepresentation through Representations and Omissions.** By labeling and marketing the Products with the Challenged Representations and Material Omissions, Defendant failed to disclose risk posed the Products.

156. **Defendant's Knowledge.** Defendant knew, or should have known, that the Products were deceptively labeled and advertised, and that the knowledge of the Products posed the Oxygen Reduction Danger, the Suffocation Danger, and the Deep Sleep Danger.

157. **Challenged Representations and Material Omissions.** Defendant knew, or should have known, that the Challenged Representations and Material

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Omissions on the labeling and advertising of the Products were material, and that a reasonable consumer would rely on the Products' labels, packaging, and advertising to ascertain the safety risks posed by the Products when making purchasing decisions.

158. **Plaintiffs' Knowledge.** Plaintiffs and Class Members did not know, nor could they have known through reasonable diligence, that the Products pose the Material Dangers.

159. **Reasonable Reliance.** In making their purchasing decisions, Plaintiffs and Class Members reasonably relied on Defendant's false, deceptive, and misleading labeling and advertising because the Products' packaging, labels, and advertising as children's toys convey that the Products are safe for children. Additionally, the Challenged Representations and Material Omissions on the Products' labels, packaging, and advertising convey that the Products do not pose a risk of the Material Dangers. Lastly, Plaintiffs' and Class Members' reliance on Defendant's labeling, packaging, and advertisements was reasonable as the Products, Defendant, and its brand are trusted and hold a reputation for safety, quality, and reliability.

160. **Intentional Inducement.** Defendant intended to induce—and did, indeed, induce—Plaintiffs and Class Members to purchase the Products in reliance on the Challenged Representations and Material Omissions on the Products' labels, packaging, and advertisements, despite the fact that the Products pose serious risks to children, including the Material Dangers.

161. **Causation/Remedies.** As a direct and proximate result of Defendant's intentional Challenged Representations and Material Omissions on the Products' labels, packaging, and advertisements, Plaintiffs and members of the Class purchased the Products and were, thereby, harmed in the amount of the purchase price they paid for the Products or otherwise overpaid for Products that do not pose a risk of the Material Dangers. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages, including, but not limited to, the amounts paid or overpaid for the Products, and any interest that would have

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for fraudulent inducement by intentional misrepresentation in the form of damages, restitution, and/or disgorgement of ill-gotten gates to compensate Plaintiffs and the Class for said monies, as well as injunctive relief, including without limitation, public injunctive relief, to enjoin Defendant's misconduct and to prevent ongoing and future harm that will result.

162. **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiffs and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiffs and consumers as Defendant was aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## COUNT SEVEN

### Negligent Misrepresentation

### (*On Behalf of Plaintiffs Salamah, Massari, and the Class*)

163. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

164. **Class.** Plaintiffs Massari and Salameh bring this claim individually and on behalf of the Class, including the California Subclass, Massachusetts Subclass, Direct-to-Consumer Subclass, and Nationwide Class, who purchased the Products within the applicable statute of limitations.

165. **Duty.** Defendant had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the development, testing, manufacture, marketing, distribution, and sale of the Products.

166. **Breach.** Defendant breached their duty to Plaintiffs and the Class by failing to exercise reasonable care in the marketing, labeling, packaging, advertising, and selling of the Products to Plaintiffs and the Class without the qualities, characteristics, and suitability for use as advertised by Defendant. Defendant did so by failing to adequately warn Plaintiffs and the Class of the Material Dangers, and by failing to promptly remove the Products from the marketplace or otherwise take appropriate remedial action. Specifically, the Products pose serious and life-threatening health risks to babies, including the Material Dangers.

167. **Defendant's Misrepresentation Through Representations and Omissions.** By labeling, packaging, advertising, marketing, and selling the Products with the Challenged Representations and Material Omissions, Defendant failed to exercise reasonable care to warn of the Material Dangers posed by the Products and, accordingly, negligently misrepresented the safety of the Products, including misrepresenting that the Products do not pose a risk of the Material Dangers.

168. **No Reasonable Grounds.** Defendant knew or should have known that the qualities and characteristics of the Products were not as advertised, labeled, packaged, marketed, or otherwise represented, that the Products were not suitable for their intended use, and that the Products were otherwise not as warranted and represented by Defendant. Specifically, Defendant knew or should have known that the Products pose life-threatening and serious health risks to children, including the Material Dangers. Defendant had no reasonable grounds for concealing or failing to

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1   identify the Material Dangers, warn of the Material Dangers, or otherwise advertise,

2   label, package, market, and sell the Products with the Challenged Representations and

3   Material Omissions.

4        169. **Challenged Representations & Material Omissions.** Defendant knew,

5   or should have known, that the Challenged Representations and Material Omissions

6   on the Products' labels, packaging, and advertising were material to consumers in

7   deciding whether to buy the Products; and that a reasonable consumer would rely on

8   Defendant's labels, packaging, and advertising to ascertain the risks posed by the

9   Products when making purchasing decision.

10       170. **Defendant's Knowledge.** Defendant knew or should have known of the

11  Products' Material Dangers; that consumers rely on Defendant to disclose on the

12  Products' labels, packaging, and advertisements all of the Products' life-threatening

13  and serious health risks from reasonably foreseeable use and misuse of the Products,

14  including the Material Dangers; and that the Products' labels, packaging, and

15  advertisements fail to adequately disclose the Material Dangers.

16       171. **Reasonable Reliance.** In making their purchasing decisions, Plaintiffs

17  and Class Members reasonably relied on Defendant's Challenged Representations

18  and Material Omissions on the Products' labels, packaging, and advertising to

19  disclose all of the Products' life-threatening and serious health risks, including the

20  Material Dangers.

21       172. **Intentional Inducement.** Defendant affirmatively misrepresented that

22  the Products are safe for use as baby sleepwear products—specifically, that the

23  Products do not pose life-threatening and serious health risks (to wit, the Material

24  Dangers). Defendant deliberately and intentionally omitted the Material Dangers

25  from the Products' labels, packaging, and advertising. Defendant intentionally and

26  deliberately made these affirmative misrepresentations and Material Omissions to

27  induce Plaintiffs and Class Members to purchase the Products. Plaintiffs and Class

28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Members were induced to buy or overpay for the Products as a result of the Challenged Representations and Material Omissions.

173. **Causation/Remedies.** As a direct and proximate result of Defendant's negligent misrepresentation, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid or overpaid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages, including, but not limited to, the amounts paid or overpaid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for negligent misrepresentation in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief, including without limitation, public injunctive relief, to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

174. **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiffs and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiffs and consumers as Defendant was aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1  was committed, authorized, adopted, approved, and/or ratified by officers, directors,

2  and/or managing agents of Defendant.

3  ## COUNT EIGHT

4  ### Unjust Enrichment/Restitution

5  ### (*On Behalf of Plaintiff Salamah, Massari, and the Nationwide Class*)

6  175. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by

7  reference all allegations contained in this complaint, as though fully set forth herein.

8  176. **Class.** Plaintiffs Massari and Salameh bring this claim individually and

9  on behalf of the Class, including the California Subclass, Massachusetts Subclass,

10  Direct-to-Consumer Subclass, and Nationwide Class, who purchased the Products

11  within the applicable statute of limitations.

12  177. **Plaintiff/Class Conferred a Benefit.** By purchasing the Products,

13  Plaintiffs and members of the Class conferred a benefit on Defendant in the form of

14  the purchase price of the Products.

15  178. **Defendant's Knowledge of Conferred Benefit.** Defendant had

16  knowledge of such benefit and Defendant appreciated the benefit because, were

17  consumers not to purchase the Products, Defendant would not generate revenue from

18  the sales of the Products.

19  179. **Defendant's Unjust Receipt Through Deception.** Defendant's knowing

20  acceptance and retention of the benefit is inequitable and unjust because the benefit

21  was obtained by Defendant's fraudulent, misleading, and deceptive representations

22  and omissions.

23  180. **Causation/Damages.** As a direct and proximate result of Defendant's

24  unjust enrichment, Plaintiffs and members of the Class were harmed in the amount of

25  the purchase price they paid for the Products. Further, Plaintiffs and members of the

26  Class have suffered and continue to suffer economic losses and other damages

27  including, but not limited to, the amounts paid for the Products, and any interest that

28  would have accrued on those monies, in an amount to be proven at trial. Accordingly,

Plaintiffs seek a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

181. **Punitive Damages**. Plaintiffs seek punitive damages pursuant to this cause of action for unjust enrichment on behalf of Plaintiffs and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiffs and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiffs and consumers as Defendant was aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## VIII.  PRAYER FOR RELIEF

182. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment against Defendant as follows:

    a. **Certification:** For an order certifying this action as a class action, appointing Plaintiffs as the Class Representatives, and appointing Plaintiffs' Counsel as Class Counsel;

    b. **Declaratory Relief:** For an order declaring that Defendant's conduct

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

violates the statutes and laws referenced herein consistent with applicable law and pursuant to only those causes of action so permitted;

c. **Injunction:** For an order requiring Defendant to change their business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, orders that Defendant immediately cease and desist from selling the unlawful Products in violation of law; that enjoin Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; that require Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and/or that require Defendant to take all further and just corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiffs and the Class, consistent with applicable law and pursuant to only those causes of action so permitted;

e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g. **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

h. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

Dated: June 7, 2024

Respectfully submitted,

**CLARKSON LAW FIRM, P.C.**

 */s/ Katherine A. Bruce*
Ryan J. Clarkson
Katherine A. Bruce
Alan Gudino

*Attorneys for Plaintiffs*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## **DEMAND FOR JURY TRIAL**

183.  Plaintiffs hereby demand a trial by jury on all issues and causes of action so triable.

Dated: June 7, 2024

Respectfully submitted,

**CLARKSON LAW FIRM, P.C.**

*/s/ Katherine A. Bruce*
Ryan J. Clarkson
Katherine A. Bruce
Alan Gudino

*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT